The appeal is from the judgment and an order denying a motion for a new trial. Mary Daly was a widow, eighty-one years of age at the time she executed a certain purported last will and testament. For a number of years she had been an invalid and unable to take care of herself and her ordinary business affairs; her hearing was impaired to such an extent that she could hear with difficulty. She was unable to read or write. In 1915, while residing in New Jersey, she met one Joseph A. Delaney, who was practicing law at Paterson, N.J. She employed him as her attorney to conduct a will contest. It seems that she became very *Page 405 
friendly with Delaney; that he invited her to his house, where she visited a number of times with him and his family. During Mrs. Daly's stay in New Jersey he looked after and attended to certain matters for her and advised in several business affairs. In 1922, she moved from New Jersey to South Dakota. Considerable correspondence took place after Mrs. Daly reached South Dakota. Delaney seems to have written her as often as every two months. Delaney for some thirteen years previous to the execution of the will occupied a position of trust, first as district judge, later judge of the court of common pleas of New Jersey. Mrs. Daly knew the members of Judge Delaney's family. It would seem that the youngest boy, Joseph Kent Delaney, was some four or five years of age at the time Mrs. Daly moved to South Dakota.
On September 30, 1928, Delaney and his wife arrived at Tyndall, S.D., from New Jersey to visit the testatrix. They arrived Sunday afternoon, and on Monday, Delaney and Father Dooley, the proponent, the priest of the local Catholic Church, drove to testatrix' farm, which was located some 20 miles southwest of Tyndall, for the purpose of inspecting it. On Tuesday, Mrs. Daly and Delaney spent some time in a room presumably talking over matters that may have related to a certain will; during this meeting directions were given to Mrs. Bouma to go to the bank and bring Mrs. Daly's will which had been drafted some time previous thereto by Judge Kirk. From the testimony, it would appear that immediately after the meeting, Delaney engaged himself with the preparation of a certain will which it appears he drafted and directed the action of the testatrix and had it signed, witnessed, and attested. On Thursday evening or on early Friday morning, Delaney and his wife left Tyndall. The will gave to Delaney in trust for his son Joseph Kent Delaney, who was then about eleven years of age, property to the value of $25,000 (the value seems to be conceded), or about five-sixths of the testatrix' entire estate. It is contended that the will was not read to the testatrix in the presence or hearing of the witnesses, nor were the testatrix, nor the witnesses, informed of its contents at the time of its execution, notwithstanding the fact that the testatrix could not read the will herself. Delaney does not claim that he is a relative of Mrs. Daly. However, in the last will and testament that he drafted, or at least in his duties as a scrivener, he *Page 406 
permitted himself and his son to be styled as such, and as follows: "I give, devise, and bequeath to my cousin Joseph A.Delaney to be held in trust by him for his son Joseph Kent Delaney."
After the purported will had been signed and witnessed, Delaney placed it in an envelope and sealed it and handed it to Mrs. Bouma, the housekeeper of testatrix, and told her to take it to the bank (this is denied by Delaney). There is evidence to the effect that the testatrix protested against taking the will to the bank, saying that she wanted to keep it in the house. There is also evidence to the effect that testatrix on several occasions asked Mrs. Bouma to read the will to her. On another occasion she tried to get Dr. Moore to read the will to her and that she tried to enlist the services of Mrs. Boschma to read the will. At one time Mrs. Bouma suggested to the testatrix that she get Father Dooley, the proponent, to read the will, and that the testatrix replied: "No, he would broadcast it all over town." A petition was presented by proponent Rev. M.F. Dooley to the county court for probate of this last will and testament. Thereafter, the probate was denied by the county court and an appeal was then taken to the circuit court, where it was tried and submitted to the court. At the conclusion of which trial, the circuit court made findings, conclusions, and a judgment in favor of the contestants denying proponent's petition and refused to admit the will to probate.
The appeal to this court presents six assignments of error. These assignments are all based upon appellant's contention that the evidence is insufficient to sustain the findings, pointing out and alleging that the court erred in finding that the will was not read and the contents made known to the testatrix, and that the court found that the testatrix was unable to move about without assistance and had spent much time in hospitals and in bed and had to have the constant assistance and attendance of other persons and was compelled to and did rely on others to look after her physical wants and attend to her business affairs, and further that the court made findings that the instrument was not a free voluntary act, will, or deed of the testatrix; that her signature was obtained and procured by undue influence exerted over her by Delaney. Appellant further urges that the court erred in making its conclusion of law that there was a fiduciary relationship existing between testatrix and Delaney, that the instrument was not the testatrix' *Page 407 
free voluntary act and signature, and assent thereto was procured and obtained by undue influence of said Delaney, and that said instrument was not the will of Mary Daly.
The foregoing assignments of error challenge the trial court's decision upon the testimony presented to him and the application of law applied to the facts, but, as we view it, we feel that it will not be necessary to incumber this opinion with a further recital of facts gathered from the testimony.
Appellant assails the court's findings and asserts that the relation of attorney and client did not exist when the will was prepared and that it is purely an assumption by the court. The evidence, however, discloses the fact that the testatrix employed Delaney to contest the will of one Daniel Dooley in New York in 1915, and that the said Delaney rendered services to the testatrix as an attorney, and that thereafter he looked after several matters of importance for her and gave her advice. After the testatrix moved to South Dakota, he communicated with her by letter several times during each year up until the time the will was drawn. There is evidence to the effect that he or his office remitted certain rentals from income property to the testatrix. Certain letters introduced in evidence indicate a personal interest in the testatrix and the letters containing the remittances were undoubtedly either written by Delaney or at his express direction. As late as in March, 1924, we find a letter written to a Mr. Edmunds relative to Mrs. Daly's income tax return in which he stated that he had mailed her a copy of the 1922 return for reference and stated that his vouchers showed that he had sent her during the year interest collected amounting to $225. From the evidence and the correspondence between the parties, it is quite evident that he acted as her legal adviser.
[1-4] The trial court was fully justified in finding from the evidence that a confidential relation existed, and where such relation exists between the parties the transactions will be scrutinized closely and condemned unless shown to be fair and aboveboard. This confidential relation existing and Delaney well knowing she was ignorant, unable to read or write, hard of hearing, and had suffered for many years and was sick and infirm in body, and had reached the advanced age of over eighty years, it was his duty to carefully guard and protect her rights, especially in view of *Page 408 
the fact that the will made him trustee of a large sum of money bequeathed to his infant son. He should have observed the rule of law applicable to his position, and which is best stated as follows: "One of the most important requisites of the validity of these transactions between persons acting under the influence of these confidenial relations is, that the party presumably under the influence of the other should have had independent advice from a lawyer, who is devoted entirely to the interest of the party he is called upon to advise, and in whom that party had entire confidence." Jones' Commentaries on Evidence, vol. 2, § 190.
Neither did Delaney observe the familiar rule of equity that one who holds a confidential relation toward another cannot use the relation for his own advantage. There is not a single word of testimony in the entire record showing that the testatrix herein received independent advice from any one, much less from a lawyer of her own choice. The Supreme Court of Minnesota treating the confidential and fiduciary relation existing between an attorney and client, wherein an attorney acting as scrivener of the will prepared a will for his brother and in which he received the greater portion of the estate, in the case of In re Keeley's Estate, 167 Minn. 120, 208 N.W. 535, 536, said: "The mere fact that a confidential or fiduciary relation existed, with opportunity to exercise influence, does not establish undue influence. Here we have such a situation, as well as activity on the part of the beneficiary in drawing the will, and its execution was under such circumstances that no living person but the beneficiary knew whether the testator knew the contents of the will. * * * The court had a right to consider, as bearing upon his credibility, appellant's unethical conduct inherently involved in such transaction. Propriety and delicacy would infer that he should not have handled the transaction. If a lawyer is fortunate enough to be named as a beneficiary in his client's will for a substantial amount, his professional honor should prompt him to insist on the testator having the will prepared by some one else, so that neither he nor his profession may be the subject of criticism. If the transaction is an honest one, there is no reason to permit the existence of suspicious circumstances. If circumstances should demand that he draw such will, he should at least surround himself with sufficient proof to show beyond controversy that it was the testator's will. Testator's *Page 409 
knowledge of the will should not be made to rest alone upon the statement of such beneficiary."
An examination of the evidence as to the conduct of Delaney fails to show that he guarded his acts and surrounded himself so as to place his acts beyond suspicion. The trial court was fully justified in making its findings relating to Delaney's conduct in the preparation of the testatrix' will.
As to the surroundings and circumstances under which this will was drawn and the opportunity by said Delaney to unduly influence the testatrix, we believe, the evidence of undue influence is much the same as the evidencc in Ekern et al v. Erickson et al,37 S.D. 300, 157 N.W. 1062. See also Johnson et al v. Shaver et al, 41 S.D. 585, 172 N.W. 676.
The evidence is somewhat conflicting, but the trial court had the opportunity to observe the demeanor of the witnesses and to determine the credibility of the testimony. We have considered the evidence of undue influence as shown at the time of the execution of the will, the confidential relation existing between the parties and which had extended over a period of many years, and the opportunity to influence the testatrix, and we are satisfied that there is sufficient evidence to sustain the inference of fact made by the trial court that undue influence and improper influence on the part of the appellant was operative when the will was executed by the testatrix and that such finding is not against the preponderance of the evidence; that the conclusions of law complained of in the assignments of error are fully supported by the findings of fact.
[5] "It is the settled law in this state that the findings of the trial court are presumptively correct, and will not be disturbed on appeal unless it appears from the record that there is a clear preponderance of the evidence against them." Stensland v. Noel, 28 S.D. 522, 134 N.W. 207, 210; First National Bank v. Taylor et al, 44 S.D. 508, 184 N.W. 244; Wright v. Heimstra,52 S.D. 453, 218 N.W. 595; Citizens' State Bank of Trosky v. Christiansen, 52 S.D. 183, 217 N.W. 203; Case Threshing Machine Co. v. Goldberg et al, 59 S.D. 289, 239 N.W. 745.
The order and judgment of the trial court are affirmed.
CAMPBELL, P.J., and POLLEY, ROBERTS, and RUDOLPH, JJ., concur. *Page 410