No. 36,065

In re Estate of Eva I. Wallace, Deceased (George W. Wallace, *Appellant*, v. Alex Hotchkiss, Administrator, etc., et al., *Appellees*).

(149 P. 2d 595)

Opinion filed June 10, 1944.

*J. E. Addington* and *Howard A. Jones,* both of Topeka, argued the cause, and *Harry K. Allen,* of Topeka, was on the briefs for the appellant.

*E. R. Sloan,* of Topeka, and *Alex Hotchkiss,* of Lyndon, argued the cause, and *W. Glenn Hamilton, Floyd A. Sloan* and *Eldon R. Sloan,* all of Topeka, were on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a judgment admitting a will to probate.

The will in question is that of Eva I. Wallace, a resident of Osage county, who died January 10, 1943. She was survived by her husband, George W. Wallace, appellant here, and by some brothers and sisters, who with the administrator with the will annexed are appellees here. After the death of Mrs. Wallace, a petition was filed in the probate court of Osage county to have her will, dated March 15, 1938, admitted to probate. The husband filed written objections. After a hearing the will was admitted to probate. From that order the husband appealed to the district court, and after a hearing that court rendered a comprehensive written opinion covering the facts and the law applicable thereto, and in which it found generally in favor of the proponents and against the contestant and that the will should be admitted to probate, and in its formal journal entry of judgment it found that the judgment of the probate court should be affirmed and the will admitted to probate, and it rendered judgment accordingly. From that order the husband appeals to this court.

The only question presented by the appeal is whether the will was properly executed, and depends largely on the weight to be given to the attestation clause of the will. There is no dispute as to the signature of the testatrix to the will, but only whether that signature was duly attested and subscribed in the presence of the testatrix by two or more competent witnesses who saw her subscribe or heard her acknowledge the same, as required by G. S. 1943 Supp. 59-606. The attestation clause and the signatures thereto were as follows:

"This instrument was on the day of the date thereof, signed, published and declared by the said testator Eva I. Wallace to be her last Will and Testament in the presence of us who at her request have subscribed our names thereto as witnesses in her presence and in the presence of each other.

BERTIE A. GARRETT,
P. W. ROBISON."

The witness Robison died before the testatrix and at the hearing in the district court it was conceded his signature was genuine. At the time of the hearing in the probate court the witness Garrett was ill at her home in Topeka and her testimony was taken by deposition.

Later at the trial in the district court, she was still confined to her home and by agreement her deposition was again used. There was but little oral evidence offered, and such as was considered by the trial court dealt with matters preliminary to the execution of the will. Under the circumstances, appellant directs our attention to the fact that we are in as good position as the trial court to weigh the evidence and that it is our duty to decide what the facts established. Such a rule has been recognized in *In re Estate of Kemper*, 157 Kan. 727, 734, 145 P. 2d 103, and cases cited therein, and will be followed here.

Mrs. Durow, a sister of Mrs. Wallace, personally present as a witness, testified that Mrs. Wallace had fallen and broken her hip and shoulder and was bedfast on March 15, 1938, on which date Mr. Robison was at the home on two occasions. On the first visit he talked with Mrs. Wallace about her will and then left to prepare it. Later he returned with the instrument now in question, at which time he, the witness and Mrs. Wallace were in the room. Mrs. Garrett, later mentioned, was called to the room. The court sustained objections to questions as to what then occurred. Certain other testimony was later admitted over objection, but was later stricken out and will not be mentioned or considered.

The deposition of Mrs. Garrett shows that she was first examined by counsel for the contestant, and then cross-examined by counsel for the proponents of the will. On her direct examination Mrs. Garrett was shown the instrument and testified that she signed it as a witness; that she did not see anyone sign it; that at the time she did not know the instrument was a will; that neither Mr. Robison nor anyone else declared it was a will; and that she learned it was a will some days later in a conversation with Mrs. Wallace. On her cross-examination Mrs. Garrett stated that she was a nurse attending Mrs. Wallace and that she was present when Mr. Robison came; that she was introduced to him; that Mrs. Wallace asked her to leave the room; that later she was called back to the room and Mr. Robison told her Mrs. Wallace was fixing up some legal papers and they would have to have another signer and would like to have her sign as a witness and that she did so. In response to a question whether Mrs. Wallace's name was on the will she said, "If it was I never saw it. He just showed me where to sign it and I wrote it . . ." In response to other questions she said that Mrs. Wallace and Mr. Robison were present when she signed, but she didn't re-

member anyone else being present; that she didn't know whether Mr. Robison signed after she did; that she didn't remember if his signature was or was not on the instrument. In response to a question whether Mrs. Wallace's name was on the will, she answered:

"No, I didn't see anybody's name. It isn't because I don't try to remember. I didn't see anybody's name. I didn't look for it. I just signed like they told me to and got out."

On further examination Mrs. Garrett stated she did not read what appeared above her signature; that she signed where they told her to and got out; that while she was nursing she had signed a good many wills.

The original will was before the trial court. In commenting on its appearance, that court stated:

"Examination of the original document shows no folding which could possibly obscure the lower one-fourth of the instrument, commencing with the appointment of an executor, followed by the testimonium clause the signature of Mrs. Wallace, the attestation clause and ending with the lines for the signatures of two witnesses."

It may be stated further that the contestant offered no testimony with respect to the manner of the execution of the will other than is contained in the deposition. The question may be said to be whether the proponents of the will made a prima facie case for its admission.

Our consideration of the facts disclosed by the oral testimony concerning matters preliminary to the execution of the will, and as to which there is no dispute, and of the facts disclosed in the deposition, leads us to the conclusion that the probate court in the first instance, and the district court on appeal, correctly considered and decided the issue presented. The written opinion of the latter court covered a full discussion of the facts and the law applicable thereto and in effect appellees have adopted it as their brief. Appellant, obviously not satisfied with that opinion, calls attention to authorities and decisions which he contends compel a contrary result. In our review we shall refer to authorities found in the opinion of the district court as well as in appellant's brief.

There have been many decisions treating of the sufficiency of the execution of a will and the weight to be given a full attestation clause, and the weight to be given the testimony of a witness which tends to contradict the recitals of the clause, and a uniformity of result has not been reached due in part to varying circumstances of fact or in some cases to differences in statutory requirements. And in some cases opposite conclusions have been reached. An extended

annotation may be found in L. R. A. 1916C, 1218 *et seq.*, and see also the authorities hereafter mentioned.

The general rule is that where a will is offered for probate, the burden of proof in the first instance is upon the proponent to make a prima facie case showing due execution of the will and when such a prima facie showing has been made, the burden shifts to the contestant to overcome that showing by clear, satisfactory and convincing evidence.

Prior to the enactment of our present probate code, the admission to probate in the probate court was *ex parte* and rather informal, and in a contest action in the district court such as was then provided the order of the probate court was prima facie evidence of the due attestation, execution and validity of the will (G. S. 1935, 22-223 and 22-224). Decisions arising under the last statute are not decisive now, for the present code provides for an adversary proceeding and for written objections and a contest in the probate court, and for a trial *de novo* in the district court if an appeal be taken. (G. S. 1943 Supp. 59-2220, 59-2222, 59-2224, 59-2401, and 59-2408, and other pertinent sections.) The instant case presents the question of what constitutes a prima facie showing, where one witness is dead, and the testimony of the living witness tends to contradict the recitals of a rather complete attestation clause. There is no question as to the competency of the testatrix, nor that the signatures of the testatrix and witnesses are not genuine, nor that the will, on its face, was not executed in full accord with statutory requirements.

As stated by the trial court, there is abundant authority that a proper attestation clause is presumptive evidence of the facts stated in it. Apparently the great weight of authority is to that effect. See 68 C. J. 982, § 749, and p. 1018, § 799; Thompson on Wills, 2d ed. 176, § 132; 1 Underhill on Wills, 276, § 201; 1 Page on Wills, Lifetime ed. 679, § 374; 2 Schouler on Wills, 6th ed. 888, § 774, and *Harrington v. Sax,* 138 Ore. 283, 4 P. 2d 635, 79 A. L. R. 389; and see, also, *German Evangelical Bethel Church v. Reith,* 327 Mo. 1098, 39 S. W. 2d 1057, 76 A. L. R. 604, and the annotations in L. R. A. 1916C 1218 and 76 A. L. R. 617. As is shown in the above authorities, the purpose of a full attestation clause is to preserve in permanent form a record of the facts attending the execution of the will, and the clause is intended as a safeguard against defective memory or poor and imperfect recollection as well as intentional forgetfulness and deliberate misrepresentation. There can be no doubt under our stat-

ute that if the testator and both witnesses were dead, a prima facie case would be made by proof of the handwriting of the testator and of the subscribing witnesses. (G. S. 1943 Supp. 59-2224.) That leads up to the weight to be given testimony of a sole surviving attesting witness whose testimony tends to contradict the recitals of the attestation clause.

The showing made by a full attestation clause, execution of which is admitted, is not conclusive, neither is the testimony of a subscribing witness which tends to contradict the recitals of that clause. Either showing may be overcome by competent evidence. But the above authorities and many of the decisions cited therein make it clear that in order that the contradictory testimony be sufficient to overcome the recitals of the attestation clause, it must be clear, satisfactory and convincing. In view of the witness' denial that she read the attestation clause, we note the language of the court in *German Evangelical Church v. Reith,* supra, that

"Neither does the presumption [of valid execution] wholly lose its force if the witnesses testify the attestation clause was not read to or by them, as a few cases say. In other matters the law does not ordinarily allow people thus summarily to destroy the effect of writings signed by them. . . . They can come on the stand and deny it, of course, and sometimes truthfully; but to say their denial, however impressive, robs their previous written attestation of its character as evidence, is to confuse weight, credibility or plausibility with substance." (l. c. 1113.)

Appellant directs our attention to *Fuller v. Williams,* 125 Kan. 154, 264 Pac. 77, and quotes at length from that part of the opinion commencing on page 163 dealing with the importance and solemnity of witnessing a will. We need not review what is there said. In that case the principal question was the competency of the maker of the will involved, and not the manner of its execution. The purported will did not bear any attestation clause, and the case does not treat of the problem presently confronting us.

We note that the trial court placed weight on our opinion in *Rice v. Monroe,* 108 Kan. 526, 196 Pac. 756. That was an action to contest a will which had been duly admitted to probate in the probate court, under procedure now replaced by the provisions of the present probate code. There, in the district court, witnesses denied due execution of the will, although they admitted acting as subscribing witnesses to a will containing a full attestation clause, and although they had given testimony in the probate court, duly reduced to writing and signed, all to the effect the will had been properly

and duly executed. This court held that although there was no affirmative testimony showing due attestation, the district court was not bound to believe the witness' testimony in that court, for they were discredited by the law. Perhaps that case is distinguishable from the case at bar, because of the sworn testimony in the probate court, and therefore may not be said to be decisive here, but that it is highly persuasive may not be gainsaid.

Measured by the above principles of law, we examine the evidence in the case at bar.

We take up first the attestation clause of the will, which it is conceded was executed by Mr. Robison and which Mrs. Garrett testified she signed. In substance that clause recites that Mrs. Wallace signed the instrument and declared it to be her last will in the presence of the two witnesses and at her request they signed their names as witnesses in the presence of the testatrix and of each other. At that stage, the situation was comparable to that which would have obtained had both witnesses been dead and their signatures had been proved, in which case there would be no argument but that a prima facie case had been made that the will had been duly executed in accordance with the requirements of our statute. The situation would be no different where, as here, the signature of the living witness was proved by her own testimony. A prima facie case for admission of the will to probate was made.

Taking up next the testimony in the deposition, what is relied upon to overcome the prima facie showing? We are asked to give controlling weight to the testimony of Mrs. Garrett contradicting in part the recitals of the attestation clause. Although Mrs. Garrett testified that she saw no one sign the instrument and that she did not know it was a will, and that she signed the attestation clause without reading it, she also testified that she had been a nurse and had signed a good many wills; that she knew she was signing a legal document as a witness. Her denial that Mrs. Wallace's name was on the instrument when she signed it was qualified by her later statement that if the name was there she didn't see it, and that she didn't remember whether anyone else was present, whether Mr. Robison signed after she did, or whether or not his signature was on the instrument. The abstract does not show clearly, but about five years had intervened between the making of the will and the taking of Mrs. Garrett's deposition, and that she might not remember would not be unusual. We have somewhat the choice whether

to accept the written recitals of the attestation clause made when the event occurred, or the possible frailties of memory of five years later disputing those written recitals. The cross-examination of Mrs. Garrett cast some doubt on her answers on direct that she didn't see anyone sign the instrument and that she didn't know it was a will. And the trial court's statement, embodied in its written opinion, that an examination of the original document showed no folding which could possibly obscure the testimonium clause, the signature of the testatrix and the attestation clause which she signed, is further evidence to us that Mrs. Garrett's statement that she did not remember what signatures there were on the will is probably true, and that possibly her recollection as to other matters is also faulty. Be that as it may, the rule is that such controverting testimony must be clear, satisfactory and convincing. As was aptly stated by the trial court in its opinion:

"It is not persuasive and the court finds itself in that state of mind described by Thompson on Wills, 176, § 132: 'When the testimony of the attesting witnesses or one of them leaves the court in doubt as to just what happened at the time of the execution of the will, the existence of the usual attestation clause, setting forth what transpired, signed by the witnesses, is sufficient to satisfy the court that all the requirements of the statute have been complied with.' "

In our opinion the controverting evidence is not sufficiently clear, satisfactory and convincing to overcome the presumption from the duly executed attestation clause that the will was executed with all the formalities required by the statute.

The judgment of the trial court is affirmed.

HARVEY, J., not sitting.