MAHLMAN, Respondent v. KRATZER et al., Appellants

(122 N.W.2d 215)

(File No. 9964. Opinion filed June 25, 1963)

**G. F. Johnson,** Gregory, for Appellants.

**Dudley R. Herman and John J. Simpson,** Gregory, for Respondent.

BIEGELMEIER, J. Whether the will of Don E. Mahlman was properly executed is the issue in this proceeding. Upon appeal from the county court, a jury rendered an advisory verdict for contestant and the trial court thereafter entered findings of fact and conclusions of law to the same effect and a judgment denying admission of the will to probate. Proponent appeals.

Deceased was a 47-year-old bachelor on June 5, 1954, the date the will bears. His mother, who died in 1958, was not mentioned in the will. Contestant Orval Mahlman is a brother and only surviving heir. The will made him a bequest of $100 and gave the balance of the estate to two charitable institutions or foundations. They were the Odd Fellows Home at Dell Rapids, South Dakota (deceased was a member of that Lodge) and Cap-

pers Crippled Children Foundation in accord with his mother's wishes, she having been a cripple for some years. The will bears signatures of three witnesses. The trial unfolded a rather novel difference as to identity of one of these witnesses, Adolph Dvorak. It appears there were two Adolph Dvoraks in that vicinity. The parties in their briefs, for clarity, have prefaced the home address to each of their names to differentiate them and this opinion will do the same, i. e., "Gregory" (S.D.) Dvorak for one and "Iona" (S.D.) Dvorak for the other. As part of proponent's case, two of the subscribing witnesses, Josephine Snider and M. A. Graham and O. E. Ford, the attorney who typed the will, testified at the trial it was "Gregory" Dvorak who was the third witness to the will and all the signatures were placed thereon when the testator and these three named witnesses were present.

"Gregory" Dvorak testified that he did not know testator Don E. Mahlman and never saw him in his life; that he never witnessed a will and the signature Adolph Dvorak on the will was not his signature. Twenty-seven checks dated in 1954, some written the same day as the will and other exhibits bearing his signature were introduced in evidence. "Iona" Dvorak testified it was his signature that appeared on the will; that he knew the testator Don Mahlman, had met him and seen him a good many times and they called each other by their first names; that he was walking by the Ford law office when Ford called him'in to witness a will; witnesses Graham and Snider, to whom he was introduced, were there; that Ford told them to sign as witnesses, which they did; that testator was not in the office during this time and he did not see him that day and testator did not sign the will in their presence. He explained he signed the will because he knew Ford and Ford asked him to do so. The trial court's findings generally accepted contestant's version.

 It is competent for a subscribing witness to impeach or deny the proper execution of a will. Such testimony should be received with caution and considered with suspicion. In re Houda Estate, 76 S.D. 388, 79 N.W.2d 289. The undisputed evidence shows the will contains the admittedly genuine signatures of testator and of three witnesses, Josephine Snider, M. A. Graham and one Adolph Dvorak, who signed an attestation clause reciting

facts indicating due execution of the will. A strong presumption arises therefrom that the will was duly and properly executed in accordance with all the formal essentials required by law. This presumption is not dependent upon the affirmative memory of a subscribing witness to give it vitality and is actually an inference of fact having evidential weight. In re Rowland's Estate, 70 S.D. 419, 18 N.W. 2d 290. As such, its force is not spent upon the introduction of contrary evidence; it remains operative throughout the trial and may be weighed by the trier of fact against opposing evidence. In order to defeat probate of the will the presumption must be overcome by clear and satisfactory evidence. Such is the teaching of the Houda opinion and cases cited therein. The difference of facts in that case and the one at bar is in Houda both subscribing witnesses did not remember seeing testator sign the will and neither saw his signature thereon, while here, one subscribing witness "Iona" Dvorak testified the testator was not present when this Dvorak signed the attestation clause. The other two witnesses were very clear and positive in their testimony that testator and all three subscribing witnesses were present and signed their names in the presence of each other. Witness Graham owned a store next door to Ford's office; Josephine Snider was his employee and a former school teacher. It was logical they be called as witnesses. Except for their identification of "Gregory" Dvorak as the third witness on the will, their version of the execution of the will was in accord with the attestation clause. While there was a conflict as to which Dvorak was the third witness, (the trial court found it was "Iona" Dvorak) it was an event which took place over five years before the trial and the evidence shows there had been confusion over the signatures of these Dvoraks which resulted in the local bank requesting the use of a middle initial "R" on "Iona" Dvorak's checks. An honest mistake in identity may well have been hardened into inflexible convictions under the heat of the controversy which engulfed the participants in the trial. Sharp exchanges, claimed threats and some bitterness pervaded the proceeding and is shown clearly by the transcript.

"Iona" Dvorak admitted Ford had read the will down to the attestation clause, and when asked if he was trying to avoid admitting that he read that clause, answered "If he did I forgot

it"; also that he wasn't paying much attention to it, so he didn't even remember having signed the will until his recollection was jogged by showing him a photostatic copy of it. He further testified:

"Q Now you weren't at all sure that you had witnessed this will is that true? A Before sometime yes.

"Q During that time of course you couldn't have been sure Mr. Mahlman was there or wasn't there if you couldn't even remember the time isn't that correct? A Yes thats right.

"Q During that time or period when you were in doubt about these matters did you go to Gregory and ask Mr. Ford whether or not you had witnessed such a will? A I don't remember.

"Q You wouldn't say you didn't or you wouldn't say you did? A Thats right.

"Q During this period, this doubtful period you did have a conversation with Mr. Salzman expressing your doubts on the matter? A I don't remember.

"Q You could have or you couldn't h a v e? A Yes. * * *

"Q At least for some time there was doubt in your mind whether you had witnessed the will? A There was to begin with.

"Q How long did that doubt continue? A Up until I saw the photostatic copy of the will. * * *

"Q Then up until that time, until you saw the signature you didn't have any independent recollection of witnessing the will? A Well to tell the truth, I didn't give it any thought."

There was rebuttal testimony that "Iona" Dvorak told Art Salzman he guessed it was "Gregory" Dvorak who signed the will and also asked Ford if he ever came to his office and witnessed a will. This shows the uncertainty or faulty recollection

of this witness and indicates one of the reasons for the weight ascribed to attestation clauses. Page on Wills, Vol. 6, Cum.Supp. § 374 (now 2 Bowe-Parker, Page on Wills, § 19.141) and In re Klein's Estate, 241 Iowa 1103, 42 N.W.2d 593 were both cited in the Houda opinion. In Klein the Supreme Court held proper execution of a will and codicil as a matter of law where the subscribing witnesses to the will and different subscribing witnesses to the codicil testified neither they nor testator said a word about what they were signing. Attestation clauses were appended to both instruments though not required by Iowa law. The trial court's denial of probate was reversed with directions to admit the will to probate. In re Wallace's Estate, 158 Kan. 633, 149 P.2d 595 is listed in the footnote to § 374, Page on Wills, supra. The only living witness contradicted the statements in the attestation clause. The court wrote: "We have somewhat the choice whether to accept the written recitals of the attestation clause made when the event occurred, or the possible frailties of memory of five years later disputing those written recitals. The cross-examination of Mrs. Garrett cast some doubt on her answers on direct that she didn't see ·anyone sign the instrument and that she didn't know it was a will." While the trial court admitted the will to probate, the Supreme Court in affirming quoted Thompson on Wills, § 132 with approval as follows:

> "Where the testimony of the attesting witnesses or one of them, leaves the court in doubt as to just what happened at the time of the execution of the will, the existence of the usual attestation clause, setting forth what transpired, signed by the witnesses, is sufficient to satisfy the court that all the requirements of the stat-. ute have been complied with."

The transcript and exhibits are voluminous and it would extend the opinion to advert to the evidence more in detail. There were conflicts and differences, in the testimony of the witnesses, some of which were immaterial and extraneous to the issues involved.

The evidence of witnesses Snider and Graham was confirmed by the attorney who prepared the will at testator's request and direction. An entry in his Attorney Daily Record shows receipt of his fee for this service written in the same or similar ink

to that of the signatures on the will. That a will was prepared by, and executed and published under the direction of, an attorney tends to support the attestation clause and due execution thereof. In Hauer v. Hauer, 45 S.D. 103, 186 N.W. 566, this court quoted from In re Taylor's Estate, 39 S.D. 608, 165 N.W. 1079 as follows:

"Our attention has been called to numerous cases where wills have been admitted to probate regardless of the fact that one or more of the subscribing witnesses have sworn to facts impeaching the certificate of attestation. But an examination of such cases reveals that in every one there were some facts or circumstances tending to impeach the memory or veracity of such witness or witnesses. In some cases the subscribing witnesses were very old when called to testify. In others the executing and witnessing of the writing was under the direction and charge of some well-qualified attorney, or the testator was himself a party who would be presumed to know, and therefore to comply with, the statutory requirements. * * * Had this subscribing witness admitted that he was in the slightest doubt in relation to the lack of publication by Mrs. Taylor, so that we had anything from which to infer that he had forgotten what actually occurred, we would affirm the judgment of the circuit court." (admitting the will to probate).

The court's conclusion is dictated by the following remarks in the Hauer opinion, supra:

"After going to the settled record and giving the evidence most careful scrutiny, and considering the case from the legal viewpoints above set forth, we are of the opinion that the prima facie proof, arising from the certificate of attestation, that the will was duly executed, published, and attested, has not been overcome."

Having reached this result it is unnecessary to consider other claimed errors.

Reversed.

All the Judges concur.