In the Matter of the ESTATE OF Bernhardt E. HEER a/k/a Ben Heer.

Lena MRAZ, Leonard Heer and Gilbert Heer, Plaintiffs, Contestants and Appellants,

v.

Iona FREIER, Defendant, Petitioner and Appellee.

No. 13436.

Supreme Court of South Dakota.

Argued Oct. 21, 1981.

Decided March 10, 1982.

Steven M. Johnson of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, for plaintiffs, contestants and appellants.

Wally Eklund of Johnson, Johnson & Eklund, Gregory, for defendant, petitioner and appellee; Charles Rick Johnson of Johnson, Johnson & Eklund, Gregory, on the brief.

HENDERSON, Justice.

### ACTION

This is an appeal from a will contest involving contestants Lena Mraz, Leonard Heer and Gilbert Heer (appellants) and proponent Iona Freier (appellee). The will in

question named proponent as sole beneficiary. Bernhardt E. Heer is the deceased testator. Pursuant to a bench trial, the court entered twenty-eight findings of fact, number twenty-seven reciting that no confidential relationship existed between decedent and proponent. We hold that such a confidential relationship did exist, but affirm the order of probate for the reasons detailed below.

## PROCEDURAL HISTORY

Decedent died on November 2, 1980. His will was filed for probate by proponent on November 14, 1980. Contestants filed an objection to probate of the will on December 8, 1980, requesting that the will be denied admission to probate for these reasons: (1) the will was procured as a result of undue influence by proponent; (2) decedent lacked testamentary capacity; and (3) the will was improperly executed and attested. Trial was held on February 17, 1981; a memorandum decision was filed on March 13, 1981; findings of fact and conclusions of law were entered and filed on April 8, 1981; and, on the latter date, the trial court entered its order admitting the will to probate holding that there was no undue influence, testator did not lack testamentary capacity, and the will was properly executed and attested. Pending this appeal, the trial court granted a motion to stay proceedings and ordered that no final distribution of any assets of the estate be made.

## FACTS

Decedent Bernhardt E. Heer was a bachelor farmer all of his adult life. Contestants are siblings of decedent. At the time of his death, decedent was farming in partnership with his brother, Gilbert Heer. For many years prior to this action, the brothers lived and worked together on the farm.

Proponent Iona Freier was born and raised in the same vicinity as decedent. She married and was divorced in approximately 1957. After operating a local tavern for several years, in 1971 proponent began to periodically assist decedent, at his request, with the farming operations. She did farm chores on a daily basis, plus assisting with seasonal field work and the operation of heavy farm equipment. In 1974 proponent moved into a vacant house on the farm. Decedent and his brother, however, continued to maintain their own separate home. Until July of 1979, proponent worked at a part-time job in a nearby town and also kept an apartment there. Although the time frame is somewhat unclear, it appears that in 1977 decedent moved into the house which proponent and he had remodeled. Finding of Fact Number Four establishes that decedent so moved due to fear of his brother.

According to proponent, no sexual relations ever occurred between herself and decedent. Proponent also testified that, over a period of years, she loaned decedent approximately ten thousand dollars at no interest. Not until 1979 or early 1980 was proponent repaid for this loan. Proponent's son (Gerald Freier), his wife and children also periodically worked on the farm. Gerald Freier had known decedent, and occasionally worked for him, for several years prior to decedent's death.

Gilbert Heer was sent to the state mental hospital for three months in 1979 shortly after an altercation between himself and Gerald Freier. It was at this time that proponent left her part-time job in town and commenced working and living on the farm full time. Finding of Fact Number Four establishes that Gilbert Heer had suffered episodes of mental illness.

A will was executed by decedent on February 29, 1980. This will left twenty-five percent of decedent's estate to his brother Leonard Heer and the remainder to proponent; Leonard Heer was named as executor. In May of 1980 decedent was diagnosed as having terminal cancer. Proponent, at this time and until the time of decedent's demise, did the cooking and washing for decedent; she also deposited at least one of decedent's business checks at his bank, made telephone calls concerning his farming business and made entries in the farm record book. During the final six

months of 1980, proponent, her son, and grandchildren were paid over $4,000 for labor on the farm.

On October 20, 1980, decedent executed a second will which effectively superseded the first will. In this latter will, proponent was named as executrix and sole beneficiary. Death came to decedent twenty-five days after the will was executed.

## ISSUES

### I.

Did the trial court err in finding that there was no confidential relationship between decedent and proponent? We hold that it did but such error was harmless under the facts of the case.

### II.

Did the trial court err in admitting decedent's will into probate due to alleged defects in execution and attestation? We hold that it did not.

### III.

Did the trial court commit prejudicial error in not allowing contestants to call Gerald Freier (son of proponent) as an adverse witness? We hold that it did not.

### IV.

Did the trial court err in not allowing Susan Bos (proponent's former daughter-in-law) to testify with regard to her opinion on whether proponent ever attempted to influence decedent in making decisions affecting the farm? We hold that it did not.

## DECISION

### I.

In its findings of fact, the court below stated that "there was not a confidential relationship between the proponent and the decedent." Contestants argue that this finding was clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970). Upon a review of the record, we agree.

Initially, we recognize the various rules of appellate deference which apply when reviewing an evidentiary finding by the trial court. *See* SDCL 15–6–52(a); *In re Estate of Shabley*, 85 S.D. 692, 189 N.W.2d 460 (1971); *In re Estate of Hobelsberger*, supra; *In re Metz' Estate*, 78 S.D. 212, 100 N.W.2d 393 (1960). Even so, the facts here effectively override any presumptions of correctness with regard to the trial court's finding that no confidential relationship existed between proponent and decedent. Multiple evidentiary particulars bear this out.

There can be no dispute that the last years of decedent's life were tightly interwoven with the day-to-day routine of proponent. For several years prior to the execution of the will in question, proponent provided substantial amounts of money to decedent and his brother; the money being repaid without interest within approximately one year of decedent's death. Furthermore, proponent lived periodically on the farm for many years and eventually resided there permanently. Decedent ultimately moved into the home which proponent occupied. During 1980, proponent began handling some bookkeeping and banking duties for decedent. Also, the son and grandchildren of proponent assisted with the farm operation and, on several occasions, were paid by decedent for their efforts.

In September of 1980, decedent, proponent and Leonard Heer all traveled to Illinois to obtain cancer treatments for decedent. Leonard Heer returned early to South Dakota from this trip and immediately left on vacation. Becoming concerned about the farm, decedent soon thereafter left Illinois with proponent and returned home.

Decedent telephoned his attorney on October 10, 1980, to arrange an appointment to execute a new will. Five days later, proponent drove decedent to the attorney's office. Decedent and his attorney met in a separate room to discuss the changes to be made in the will while, according to propo-

nent and decedent's attorney, proponent remained in the lobby area. The trial court entered a finding of fact stating that proponent was not present when these changes were discussed. Testimony by a third party, however, was to the effect that proponent was with decedent and decedent's attorney at the time these changes were discussed.

On October 20, 1980, proponent again drove decedent to the attorney's office for the purpose of executing the new will. Due to the deteriorating health of decedent, he was not able to walk to the office of his attorney; hence, the will was executed in decedent's automobile. As the mechanics of execution were carried out, the attorney sat in the front seat with decedent, with proponent in the rear seat and the two witnesses to the will positioned at the sides of the automobile. At trial, proponent testified that she never spoke with decedent about the provisions of his will nor did she know anything with regard to the will until the day it was executed. Moreover, proponent testified that she had nothing to do with telling decedent what to put in the will.

■ Confronted with the evidence, the trial court perceptively stated in its findings of fact "[t]hat from the time that the proponent moved out to the Heer farm to help the decedent, her role in many respects was that of a wife to the decedent." But the trial court went on to conclude that no confidential relationship existed between these two individuals. Within this incongruity and the facts of this case, we find error.

■ A confidential relationship "exists whenever trust and confidence is reposed by the testator in the integrity and fidelity of another." *In re Estate of Hobelsberger*, supra, 85 S.D. at 291, 181 N.W.2d at 460 (1970). This Court in *Hyde v. Hyde*, 78 S.D. 176, 186, 99 N.W.2d 788, 793 (1959) (citations omitted), observed that a confidential relationship "is not restricted to any particular association of persons. It exists whenever there is trust and confidence, regardless of its origin.... [T]he existence of

such a relationship . . . is a question of fact to be determined from the evidence."

■ We conclude that the facts herein indicate that there was a confidential relationship between proponent and decedent at the time the will in question was executed. *See Matter of Estate of Zech*, 285 N.W.2d 236 (S.D.1979). The existence of this relationship, however, does not raise a presumption of undue influence unless it is also established that the beneficiary actively participated in the preparation and execution of the will under which she unduly profits. *In re Estate of Anders*, 88 S.D. 631, 226 N.W.2d 170 (1975); *In re Estate of Hobelsberger*, supra; *In re Metz' Estate*, supra.

■ At trial, proponent specifically testified that she had nothing to do with instructing decedent as to the terms of his will. Proponent also testified, as did decedent's attorney, that she was not present during the time that decedent informed his attorney of the changes he desired in his will. A finding of fact to this effect was entered by the trial court. Although proponent was seated in the rear seat of the automobile when the will was executed, there was no indication that she actively participated in the preparation or execution. Her mere presence in the automobile is not a fact of preparation or execution. In consideration of these facts, we cannot say that proponent actively participated in the preparation and execution of decedent's will. *Cf. Matter of Estate of Nelson*, 274 N.W.2d 584 (S.D.1978); *In re Estate of Shabley*, 85 S.D. 692, 189 N.W.2d 460 (1971); *In re Estate of Hobelsberger*, supra.

■ Even though the existence of a confidential relationship, in and of itself, does not create a presumption of undue influence, it may demand that the relationship be examined with close judicial scrutiny so as to insure that the transactions which transpired in conjunction with the confidential relationship are fair and aboveboard. *In re Estate of Shabley*, supra; *In re Estate of Hobelsberger*, supra; *In re Rowlands' Estate*, 70 S.D. 419, 18 N.W.2d 290 (1945);

*In re Daly's Estate*, 59 S.D. 403, 240 N.W. 342 (1932). After a review of the transactions which occurred during the existence of the confidential relationship between proponent and decedent, we are convinced that they were conducted fairly and free from fraud. Accordingly, although we hold that the trial court erred in not finding the existence of a confidential relationship, such error was harmless in light of our ultimate disposition of this issue.

## II.

■ Certain allegations of improper execution of the will are also made by contestants. *See* SDCL 29–2–6. After reviewing these allegations and considering the previous decisions of this Court, we hold that the will of decedent was executed within established legal confines. *See Mahlman v. Kratzer*, 80 S.D. 264, 122 N.W.2d 215 (1963); *Hauer v. Hauer*, 44 S.D. 375, 184 N.W. 1 (1921); *In re Taylor's Estate*, 39 S.D. 608, 165 N.W. 1079 (1917). Here, an experienced attorney prepared the will and took every precaution to see that the will was properly executed and attested. "That a will was prepared by, and executed and published under the direction of, an attorney tends to support the attestation clause and due execution thereof." *Mahlman v. Kratzer*, supra, 80 S.D. at 270, 122 N.W.2d at 219.

## III.

■ Contestants also contend that the trial court erred in denying them the opportunity to examine at trial the son of proponent, Gerald Freier, as an adverse witness. SDCL 19–14–20 provides that a "witness identified with an adverse party" may be interrogated by the use of leading questions. The will provided that Gerald Freier, as an intestate heir of proponent, would become a beneficiary of decedent's estate if proponent predeceased testator; Gerald Freier was named as the alternate executor of the will. Under the evidence, a sufficient showing was made that he was identified with proponent to create an "adverse witness" status. Contestants proceeded to

examine Gerald Freier at length as their witness. Since the trial court's findings and conclusions (aside from the confidential relationship issue) were amply based on other evidence in the record, we cannot say that this error was prejudicial. *Matter of M.B.*, 288 N.W.2d 773 (S.D.1980); *Larson v. Locken*, 262 N.W.2d 752 (S.D.1978); *State Highway Commission v. Beets*, 88 S.D. 536, 224 N.W.2d 567 (1974).

## IV.

■ Contestants argue that Susan Bos should have been allowed to give her opinion on whether proponent ever attempted to exercise undue influence over decedent since, during the summer of 1979, she was on the farm and privy to conversations between decedent and proponent. In attempting to elicit this testimony, contestants were attempting to prove that proponent had a disposition to exert influence over decedent. Proponent, however, contends that there existed insufficient foundation for Ms. Bos to give her opinion in that she had testified that she could not remember any specific incidents of proponent trying to influence decedent. Ms. Bos' opinion was not received on this basis; also, a similar objection to the offer of proof was sustained.

SDCL 19–15–1 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) rationally based on the perception of the witness and

(2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

This Court stated in *Fleege v. Fleege*, 89 S.D. 137, 140, 230 N.W.2d 230, 232 (1975) (citation omitted):

As is permissible in will contests the trial court [may allow] considerable latitude in the admission of evidence, however remote, in relationship to the time of execution of the will, which [tends] to bear on the issue of relative competency and undue influence.

We hold that the reverse corollary of *Fleege* allowed the trial court sufficient latitude to exclude the opinion testimony of Susan Bos.

## CONCLUSION

During oral argument of this appeal, counsel for contestants abandoned the contention that decedent lacked testamentary capacity. We have reviewed the remaining issue advanced by contestants and find it to be without merit.

The order of the trial court is affirmed.

WOLLMAN, C. J., and MORGAN and FOSHEIM, JJ., concur.

DUNN, J., dissents.

DUNN, Justice (dissenting).

The majority opinion is correct in its finding that a confidential relationship existed between proponent and decedent at the time the will in question was executed. I disagree, however, with the conclusion that the trial court's error in not finding a confidential relationship was harmless error.

Where a confidential relationship exists between the testator and the beneficiary, a presumption of undue influence arises if it is shown by a preponderance of the evidence that the beneficiary actively participated in the preparation and execution of the will and that the beneficiary unduly profits in the will. *Matter of Estate of Nelson*, 274 N.W.2d 584 (S.D.1978); *In re Estate of Anders*, 88 S.D. 631, 226 N.W.2d 170 (1975); *In re Metz' Estate*, 78 S.D. 212, 100 N.W.2d 393 (1960). The establishment of facts giving rise to the presumption also support a prima facie case which can sustain a finding of undue influence. *Matter of Estate of Nelson, supra; In re Rowlands' Estate*, 70 S.D. 419, 18 N.W.2d 290 (1945).

The facts indicate that a confidential relationship existed between proponent and decedent at the time the will was executed. Proponent allegedly lent substantial sums of money to decedent and his brother. The loans were repaid without interest, just one year prior to decedent's death. Proponent lived with decedent prior to his death and did the cooking, housekeeping and assisted with the farm business. In addition, decedent relied upon proponent for transportation needs. In 1980, proponent also began handling some bookkeeping and banking duties for decedent. During the last half of 1980, decedent paid over $4,000 to proponent, her son and grandchild for labor on the farm.

The facts also indicate that proponent actively participated in the preparation and execution of the will. On October 15, 1980, proponent drove decedent to the attorney's office. According to proponent and decedent's attorney, decedent and his attorney met in the Menno bank conference room to discuss changes to decedent's will. Proponent remained in the bank lobby. The testimony of one of the witnesses to the will, however, indicates that proponent was with decedent in the conference room during the will discussion.

Proponent drove decedent to the attorney's office on October 20, 1980 to execute the new will. She informed the attorney that decedent was having difficulty walking due to his ill-health and asked the attorney if he could meet with decedent in the automobile for purposes of executing the will and to sign a power of attorney. While the will was being executed, the attorney sat in the front seat of the automobile with decedent, proponent sat in the rear seat, and the two witnesses were standing at the sides of the automobile. The attorney read the will to decedent prior to the execution. Decedent then executed a power of attorney authorizing proponent to act in his behalf in his business and personal affairs.

Added to the fact that proponent was present during the execution of the will and actively participated in bringing decedent to the attorney's office to prepare the will is the fact that decedent's wills progressively disinherit his collateral heirs. In February of 1980, decedent executed a will that left twenty-five percent of his estate to his brother Leonard Heer and named Leonard as the executor. The remainder of the estate was left to proponent. The October,

1980 will totally disinherited Leonard and left everything to proponent. While Leonard is not considered the natural object of this decedent's bounty, *In re Estate of Fleege*, 89 S.D. 137, 230 N.W.2d 230 (1975), his gradual disinheritance by decedent in wills drafted while proponent was in a confidential relationship with decedent demands close judicial scrutiny. *Matter of Estate of Nelson, supra.* Further, the evidence in the record reveals that decedent and his brother Gilbert lived together, farmed together as partners, and had a good relationship prior to the advent of proponent on the scene. Leonard lived ten miles from decedent's farm and had frequently assisted decedent with the farm work until proponent objected. The change in relationship with his brothers, the pattern of wills, and decedent's execution of a power of attorney indicates an inability by decedent to resist proponent's influence.

These facts are sufficient to create a presumption of undue influence. The attorney testified that decedent told him the reason he changed his will was because proponent had been very kind to him and he wanted to show his appreciation. This evidence alone is insufficient to rebut the presumption. No evidence was presented indicating that proponent took no unfair advantage of her dominant position. In fact, the evidence indicated to the contrary. Subsequent to the onset of decedent's illness, proponent was paid $10,450 for an undocumented loan that she previously made to decedent; she, her son and granddaughter received $4,000 over a six-month period for labor; and a power of attorney was signed by decedent. A prima facie case of undue influence was established and it required a finding of undue influence. I would reverse the trial court.