In The Matter of the ESTATE OF
Sidney J. SMITH, Deceased.

Nos. 18226, 18246.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1994.

Decided Aug. 10, 1994.

Rehearing Denied Sept. 14, 1994.

Robert A. Martin, Rapid City, for appellant Merry Lewis Lambson.

Doyle D. Estes, Rapid City, and Nora Kelley of Kelley Law Office, Rapid City, for appellee Frank V. Simpson.

AMUNDSON, Justice.

*In Matter of Estate of Smith,* 481 N.W.2d 471 (S.D.1992) (*Smith I* ), this court found a confidential relationship existed between decedent Smith and appellant Merry Lambson (Lambson) and remanded the matter to the trial court for reconsideration. On remand, the trial court invalidated Sidney Smith's will and other transactions on the basis of undue influence exercised in its preparation. Lambson appeals from the remand decision. We affirm.

## FACTS

The facts of this case are set forth in *Smith I,* 481 N.W.2d 471. In *Smith I,* this court shifted the burden to Lambson to show by a preponderance of the evidence that she took no unfair advantage of Smith in the creation of the will, the deed transferring decedent's home to Lambson, the joint bank accounts, and the various cash gifts. *Id.* The trial court was also instructed to determine whether Lambson unduly profited under the new will. *Id.*

After considering the testimony of three witnesses at the remand proceedings, the trial court concluded that the initial gifts and transfer of the house were not the result of undue influence. The trial court denied probate of the June 20th will, ruling that it, the joint accounts established with Smith, and various cash gifts including the withdrawal of Smith's funds for purchasing the Ford Bronco, were accomplished by Lambson's exertion of *undue influence over Smith.* Lambson appeals.

We will address the issues in this order:

1. Did the trial court correctly determine and apply the burden of proof necessary for Lambson to rebut the presumption of undue influence?

2. Was the trial court clearly erroneous in finding Lambson did not rebut the presumption of undue influence for the June 20, 1988, will, the joint bank accounts and various cash gifts?

3. Did the trial court err in awarding prejudgment interest on $29,500.00?

4. Did Simpson preserve the issue of fraud for this appeal?

## ISSUES ON CROSS–APPEAL

1. Was the trial court clearly erroneous in finding that the transfer of the house was not the result of undue influence?

2. Did the trial court err by refusing to find that the will and personal property transfers were the result of fraud?

## DECISION

## ISSUE 1

Did the trial court correctly determine and apply the burden of proof necessary for Lambson to rebut the presumption of undue influence?

On remand, the trial court was instructed to determine whether Lambson, through her confidential relationship with Smith, had taken unfair advantage of Smith and whether she unduly profited under the new will. *Smith I* at 475. "The finding of a confidential relationship shifts the burden to Lambson to show by a preponderance of the evidence that she took no unfair advantage of Smith in the creation of the will, the deed transferring decedent's home to Lambson, the joint bank accounts and the various cash gifts." *Id.* The active participation by Lambson in the preparation and execution of Smith's will, coupled with the confidential relationship between her and Smith, raises a presumption of undue influence on the part of Lambson if she unduly profited under the will. *Id.*

After considering the written argument of counsel and testimony of witnesses called at the remand trial, the trial court drafted a letter to both parties' counsel outlining its decision. The written decision stated: "[T]he burden is on Miss Lambson to show by a preponderance of the evidence that she exercised 'the utmost good faith' and refrained 'from obtaining any advantage at the expense of the confiding party.' *Kase v. French*, 325 N.W.2d 678, 690 (S.D.1982)." Lambson claims the trial court erred by relying on *Kase* as authority because it did not involve a will contest but rather a vendor/vendee transaction.

■ The trial court did not expressly incorporate this written decision into the findings of fact and conclusions of law which were signed and filed by the trial court. It is settled law that this court does not review a trial court's memorandum opinion unless it is expressly incorporated in the trial court's findings of fact and conclusions of law. *Olson v. Olson*, 438 N.W.2d 544 (S.D.1989); SDCL 15-6-52(a); *see also Jones v. Jones*, 334 N.W.2d 492 (S.D.1983); *Hitzel v. Clark*, 334 N.W.2d 37 (S.D.1983); *Dykstra v. National Bank of South Dakota*, 328 N.W.2d 862 (S.D.1983). Under this settled precedent, the trial court's letter to counsel is not reviewable by this court.

■ The findings entered by the trial court specifically state that Lambson actively participated and took unfair advantage of Smith in creating the will, the joint accounts and various cash gifts including the withdrawal of Smith's funds for purchasing a Ford Bronco. A review of this record discloses ample evidence to support the trial court's findings. The trial court correctly placed the burden of establishing no unfair advantage upon Lambson.

## ISSUE 2

Was the trial court clearly erroneous in finding Lambson did not rebut the presumption of undue influence for the June 20, 1988, will, the joint bank accounts, and various cash gifts?

In reviewing the trial court's decision, this court is bound by statute to apply the clearly erroneous test. *Smith I*, 481 N.W.2d at 473.

In reviewing this matter, we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses.... In addition, we must review the facts in the light most favorable to the findings of the trial court and all conflicts in the evidence must be resolved in its favor.

*Id.* at 474 (citations omitted).

■ A finding is not clearly erroneous unless, upon consideration of the entire evidence, the reviewing court is left with a definite and firm conviction that a mistake has been committed by the lower court. *In re Estate of Pierce*, 299 N.W.2d 816, 818–19 (S.D.1980).

■ As stated earlier, a presumption of undue influence arises when: (1) a beneficiary has a confidential relationship with a person; (2) the beneficiary actively participates in a transaction or the preparation and execution of a person's will; and (3) unduly profits therefrom. *Black v. Gardner*, 320 N.W.2d 153, 157 (S.D.1982); *Smith I*, 481

N.W.2d 471. After the remand hearing, the trial court found Lambson took unfair advantage of her dominant position over Smith in creating the will, joint bank accounts and various cash gifts. The trial court also found Lambson had unduly profited. These two findings, in conjunction with the confidential relationship, create a presumption of undue influence. *In Re Estate of Heer*, 316 N.W.2d 806, 810 (S.D.1982).

▬ The only evidence presented by Lambson at the remand hearing was the testimony of George Bowlby (Bowlby), a close friend of Smith; Darlene Knutson (Knutson), an acquaintance of Smith; and Renee Walenta (Walenta), an employee of Norwest Bank.

Bowlby testified Smith was a strong-willed and independent-minded individual who wanted Lambson to have the house. Bowlby corroborated prior evidence that Smith drafted a new will because he did not trust Simpson. Bowlby also testified that money in the Black Hills Federal Credit Union was to be used by Lambson for Smith's care but did not testify about cash gifts to Lambson.

Knutson met Smith while her daughter and Smith's wife, Ruby, were in intensive care at the Rapid City Regional Hospital. Knutson testified that Smith was very fond of Lambson; however, Knutson did not testify about the will, gifts or money transfers made by Smith.

Walenta testified that Smith signed an account closing sheet and purchased a CD with the help of Frank Simpson. She testified that Smith later reversed this transaction and finally closed his account with Norwest Bank.

On June 6, 1988, Lambson drafted a power of attorney for Smith's signature while he was hospitalized. Shortly thereafter, Smith was released.

Fifteen days later, Lambson became joint owner of Smith's checking and savings accounts at the Black Hills Credit Union. Less than three weeks later, Lambson misin-

formed Smith that the CD purchased with the help of Simpson was for twenty years, not two years. The same day, Lambson's name was added to a safety deposit box. The next day Lambson's name was added to Smith's Norwest Bank savings account. Three days later, Smith cashed the CD and deposited the money in the Norwest Bank savings account. All of this occurred within two months of Lambson's move into Smith's home.

Two months later, Lambson used her power of attorney to withdraw $17,050.25 from Smith's Norwest Bank savings account and his Credit Union savings account to buy a new Ford Bronco. After withdrawing this money, she drafted a note for this $17,000.00 loan payable at $200.00 per month until Smith's death. Lambson made only one payment. She wrote Smith a check for $200.00, endorsed his name on the back, and deposited it in his account.

In October, Lambson closed out Smith's safe deposit box and kept part of the contents. She also drafted a note which gave her all his money in Black Hills Federal Credit Union. Lambson testified that the day after Smith died, she withdrew all the money from the joint tenancy accounts because she feared Frank Simpson would get this money.

Lambson claims all these were gifts that Smith desired she receive. She argues that Smith was a strong-willed, independent-minded individual who could not be influenced by another person. Evidence showed Smith was strong-willed and independent-minded but was not a person who customarily gave away thousands of dollars. Despite Smith's conservative history, Lambson received approximately $61,150.00 in gifts and alleged loans from the $72,839.05 estate in less than seven months.

▬ The trial court also found that Lambson had taken unfair advantage of her dominant position when she had the new will drafted and executed while Smith was in the hospital.[1] Lambson argues that the trial

1. On the day Smith was admitted to the hospital for the second time in one month, Lambson arranged for Smith to execute a new will. She

called her former accountant to prepare the will. The accountant prepared the will without speaking to Smith. Lambson arranged the witnesses

court erred because it did not enter specific findings on all of the elements of undue influence[2] and did not find improper persuasion.

■ Findings on each element of undue influence were not required. *Black*, 320 N.W.2d at 158. The trial court began the remand proceedings with a presumption that Lambson exerted an unfair advantage over Smith. *Smith*, 481 N.W.2d at 475. Therefore, the trial court only needed to determine whether Lambson unduly profited under the new will and transactions. *Heer*, 316 N.W.2d at 810. After finding Lambson had unduly profited from the will, the trial court needed to determine whether Lambson had rebutted the presumption of undue influence. *Id.* The trial court did not need to make specific findings of improper persuasion or the elements of undue influence, because Lambson had a confidential relationship with Smith. After considering all of the evidence, including evidence presented on remand, it is obvious that the trial court examined this case with close judicial scrutiny and found that Lambson's actions in the various transactions would not qualify as "fair and above board." These findings are supported by the record and are not clearly erroneous.

## ISSUE 3

Did the trial court err in awarding prejudgment interest on $29,500.00?

■ In South Dakota, prejudgment interest is allowed when the exact amount of damages is known or readily ascertainable.

*City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 112 (S.D.1994) (citing *State v. Ed Cox & Son*, 81 S.D. 165, 180, 132 N.W.2d 282, 290–91 (1965)). Damages in this case certainly were easily ascertainable and precedent in this court places the awarding prejudgment interest at the trial court's discretion.

■ The trial court awarded prejudgment interest to Smith's estate pursuant to SDCL 55–2–2.[3] Although the award of prejudgment interest was not an abuse of discretion because the damages were readily ascertainable, the trial court should have awarded the interest pursuant to SDCL 21–1–11[4] rather than SDCL 55–2–2.

SDCL 55–2–2 addresses the duties and liabilities of trustees. No trust or trustee existed in this case. Therefore, we affirm the trial court's award of prejudgment interest via SDCL 21–1–11.

## CROSS–APPEAL ISSUE 1

Was the trial court clearly erroneous in finding that the transfer of the house was not the result of undue influence?

■ Simpson claims the trial court erred in finding the transfer of the house was not the result of undue influence. There was conflicting testimony as to Smith's intentions for the house. A number of witnesses testified Smith had an adamant desire for Lambson to receive the home as a reward for taking care of him. Other witnesses claimed Smith wanted Simpson to receive the house because Simpson's mother bought the house. After considering all the evidence the trial

---

for the execution and she was present when the will was executed. The new will left Smith's car, furniture, and a life estate in his home to Lambson.

2. The four elements of undue influence include: (1) decedent's susceptibility to undue influence; (2) opportunity to exert such influence and effect the wrongful purpose; (3) a disposition to do so for an improper purpose; and (4) a result clearly showing the effects of undue influence. *Matter of Estate of Pierce*, 299 N.W.2d 816, 819–20 (S.D. 1980).

3. SDCL 55–2–2 provides:
   A trustee may not in any manner use or deal with the trust property for his own profit or for any other purpose unconnected with the trust.

If he does so, he may, at the option of the beneficiary, be required to account for all profits thereby made or to pay the value of the use of the trust property, and if he has disposed thereof, to replace it with its fruits or to account for its proceeds with interest.

4. SDCL 21–1–11 provides:
   Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debt is prevented by law, or by the act of the creditor, from paying the debt.

court concluded: "[Smith's] transfer of his house ... to Ms. Lambson was not the result of Ms. Lambson taking unfair advantage of her dominant position over [Smith]." In other words, Lambson successfully rebutted the presumption of undue influence.

■ There is no question conflicting evidence is reflected in the record, but this court must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Smith I,* 481 N.W.2d at 474. We recognize all conflicts in the evidence must be resolved in favor of the trial court's findings. *In Re Metz' Estate,* 78 S.D. 212, 214, 100 N.W.2d 393, 394 (1960). It is not for this court to determine whether it would have made the same decision; rather, the question is whether sufficient evidence exists in the record to support the trial court's decision. *Herr,* 316 N.W.2d 806. There is sufficient evidence to support the trial court's decision and Simpson has failed to show that the trial court clearly erred in awarding the house to Lambson.

We have considered all other issues raised by the parties and find them to be without merit.

The trial court is affirmed on all issues.

MILLER, C.J., and WUEST, HENDERSON and SABERS, JJ., concur.