PETERSON, Respondent, v. IMBSEN et al, Appellants.

(194 N. W. 842.)

(File No. 5092. Opinion filed July 19, 1923.)

1. **Wills—Evidence—Burden of Proof—County Court—Burden of Proving Undue Influence Is on Contestant.**

   The burden of proving undue influence in a will case is on the contestant.

2. **Wills—Burden of Proof—Presumptions—Opportunity Alone Does Not Establish Undue Influence.**

   Opportunity alone is not sufficient to warrant an inference of undue influence.

3. **Wills — Testamentary Capacity — Undue Influence — Finding of Want of Testamentary Capacity Not Sustained by Evidence as to Mode of Disposition.**

   In a will contest, based upon mental incapacity and undue influence, where it appeared that testatrix had devised all her property to her first husband's nephew and his wife, leaving nothing to her sister, and that the beneficiaries under the will had been her neighbors and were on friendly terms with her, evidence held insufficient to sustain a finding that testatrix did not have testamentary capacity to make the will.

4. **Wills—Testamentary Capacity—Undue Influence—Giving Property to Strangers or for Unusual Purposes May Be Considered as to Undue Influence and Testamentary Capacity.**

   Devising or bequeathing property to strangers or for unusual purposes is a circumstance to be taken into consideration on questions of undue influence and testamentary capacity.

5. **Wills — Testamentary Capacity — Definitions — What Constitutes Testamentary Capacity Stated.**

   For the purpose of making a will, one has a sound mind, who, without prompting, has a full and intelligent knowledge of the act engaged in and of the property he possesses, and is capable of comprehending its condition, and has intelligent perception and understanding of the disposition he wishes to make of it and of the persons he desires shall be recipients of his bounty, and recollects and apprehends the nature of the claims of those who are excluded from participating therein.

Appeal from Circuit Court, McCook County; Hon. John T. Medin, Judge.

Proceedings by Beret Peterson against Jacob P. Imbsen and wife, to contest the will of Enger Margrete Engelsen. Judgment for contestant, and proponents appeal. Reversed.

*Kirby, Kirby & Kirby,* of Sioux Falls, and *Chas. H. McCay,* of Salem, for Appellants.

*R. M. Shield,* of Salem, and *Bogue & Bogue,* of Parker, for Respondent.

Appellants cited: Gillette v. McLaughlin (S. D.), 184 N. W. 277; In re Bolls Estate (S. D.), 178 N. W. 880; In re Whitman Estate, 184 N. W. 975; 28 R. C. L., Sec. 35; In re Corson's Estate, 29 S. D. 14, 28 R. C. L., Sec. 37; Goodbar et al v. Lidikay et al, 35 N. E. 691; Freeman v. Easley, 117 Ill. 317, 7 N. W. 656.

Respondent cited: Johnson v. Shaver (S. D.), 172 N. W. 676; Schooler v. Wills, Sec. 242; Alexander on Wills, 931; Watkins v. Brandt, 46 Wis. 425, 1 N. W. 82; In re Abel's Estate, 93 Pac. 227; In re Schapter's Estate (Colo.), 85 Pac. 688; In re Loveland's Estate (Cal.), 123 Pac. 801; In re Houston's Estate (Cal.), 124 Pac. 852; In re Law's Estate (Ia.), 138 N. W. 531; Davis v. Davis, 137 N. W. 283; Cash v. Dennie, 139 N. W. 921; Delafield v. Parish, 25 N. Y. 1; Kletschka v. Kletschka, 129 N. W. 372; Wampler v. Harrell (Va.), 72 S. E. 136; Crum v. Crum, 132 S. W. 1070; Drum v. Clapps, 82 N. W. 1020, 240 Ill. 524; In Matter of Will of Piney, 6 N. W. 791; Barner v. Barnes, 66 Me. 286; In re Ames, 51 Ia. 596, 2 N. W. 408; Leach v. Leach, 11 Pa. Law 177; In re Blair's Will, 16 Daly 540, 16 N. Y. Supp. 874; Besley v. Denson, 40 Tex. 416; Beaver v. Spangler, 93 Ia. 576, 61 N. W. 1072; Kerr v. Lunsford, 31 W. Va. 659, 8 S. E. 493; Monatt v. Scott, 106 Ia. 203, 76 N. W. 717; Paulus v. Reed (Ia.), 96 N. W. 757.

POLLEY, J.  This appeal grows out of the contest of the last will and testament of one Enger Margrete Engelsen. The grounds on which the will is contested are mental incapacity to make a will and undue influence exercised over the testatrix by the beneficiaries named in the will. Judgment was for the contestant, and the proponents of the will appeal to this court.

The testatrix was a Norwegian by birth, and at the time of the execution of the will was 71 years of age. She had been twice married, but had never had any children, and at the time of making the will on December 8, 1914, her second husband had been dead something over four years. She came from Wisconsin to McCook county with her first husband some 40 years ago and

settled on a quarter section of land on which she continued to live until the time of her death in 1918, and it is this same quarter section of land that is the bone of contention in this case. The beneficiaries, the defendants and appellants herein, are husband and wife, and the defendant Jacob Imbsen is a nephew of decedent's first husband. Decedent and defendants lived on neighboring farms all of the time since about 1883, until decedent's death in 1918, and during all that time were on very friendly and intimate terms.

The testator left as her sole heirs at law a brother, since deceased, and a sister, living in Norway, and who is the contestant herein. During her residence in McCook county, decedent had in her household a boy known as Ennis Engelsen and a girl now known as Clara Moore, whom decedent reared from infancy.

The girl married when she was 16 years old and left home and never after appears to have given the testatrix any consideration whatever. The boy, Ennis, married when about 22 years old, and thereafter appears to have taken no interest in the welfare of the testatrix.

The will in question was executed under the following circumstances: Early in December, 1914, testatrix suffered a severe personal injury on her said farm. Ennis Engelsen, who, with his wife, was then living on decedent's farm, immediately notified the defendants of said injury. They at once went to decedent and took her to their home, where they called a physician and cared for her as best they could until she was sufficiently recovered to return to her own home. Two days after decedent was taken to defendant's home, defendant Jacob Imbsen called at the office of a lawyer in Salem and told him that decedent wished him to come out to defendant's place and draw a will for her, but no suggestions were made by defendant as to the disposition that was to be made of the property. The lawyer told defendant to go home and find out what disposition decedent wished to make of her property and come back and tell him how the property was to be disposed of, and that he would then draw the will accordingly and take it out and let the testatrix execute it. Defendant did as directed and about the second day thereafter, returned and told the said lawyer how the testatrix wished to dispose of her property. The lawyer thereupon drew the will as directed and took it out to

defendant's home, where it was read over and explained to testatrix and by her signed in the presence of three competent witnesses.

It is not contended that the will was not executed with due formality or that it was not in all respects legally executed. But contestant claims that the circumstances were such as to show that defendants exercised undue influence over the decedent and induced her to make a will by which all her property was left to them. This contention is not supported by the evidence. It is true decedent was in defendant's house. She was badly injured; she appears to have entertained some doubt as to whether she would recover from her injuries, and was wholly dependent on defendants for care and attention during her helplessness. It is also true that for some considerable time prior to the injury defendant Imbsen had been looking after decedent's business and exercising general supervision over her farm. But there is no evidence whatever that defendants ever took advantage of their opportunity or in any manner tried to influence decedent in the disposition of her property or asked her to make a will or to leave her property to them. No doubt she felt very grateful to them for their kindness to her in her hour of trouble.

[1, 2] The burden of proving undue influence is on the contestant. Johnson v. Shaver, 41 S. D. 585, 172 N. W. 676. But opportunity alone is not sufficient to warrant an inference of undue influence. Gillette v. McLaughlin, 44 S. D. 499, 184 N. W. 277.

[3] Upon the question of testamentary capacity of the testatrix, we are satisfied that the findings of the trial court are contrary to the clear preponderance of the evidence. The evidence on this question is very voluminous, and space forbids a review of it in its entirety. The general character and force of this evidence may be shown by the testimony of any one of several witnesses. G. P. Winberg, a witness for contestant, testified on cross-examination as follows:

"In the fall of 1914 we took over one of our corn pickers to sell. I bought two cows at one time after her first husband's death. She was as bright as the average woman. Her second husband died in 1910. At the sale in 1914 the property all went for a fair price. She visited at my place about once a week or

once a month all the time I knew her. I first noticed a change in her mental ability after Mr. Engelsen died. The queer thing that I saw her do was that she was not doing the business and she let Ennis do the business. She wanted to allow him to do it, and he bought a lot of stuff he could not pay for and went into debt too much, but I did not consider that evidence of insanity. She always knew me and my family and always kept clean about her person, and she kept her house clean up until the time of her last sickness. She knew all the neighbors when she saw them. She knew the cows she was milking, and she made butter and marketed it. She did not make any after 1914. She knew the different crops she was raising. And she always knew her own place. She came over to our house without assistance. She knew who Clara was and who Ennis was all the time, and she knew they were a boy and a girl she had raised and she knew which church she wanted to go to, and I think if she sold me anything she would know enough to count the money and get it right, and if she bought anything she would pay for it. I never saw a Norwegian paper at her place, but she talked as if she had been reading something. I think if she owed me something she would have known enough and would have been honest enough to have paid me, and if I owed her something she would know enough to want me to pay it back. I think as long as I knew her she knew who her relatives were and realized where she was born and all those things. I noticed when I talked with her that she was not a good business person. The strangest thing I noticed was the fact that she let Ennis run the place too much. She was a saving woman. I would not have hesitated to buy corn, hay, or calves or anything else I wanted from her in the fall of 1914. I heard of her getting hurt shortly after she got hurt. I did not go over to see her. I know she went up to Jacob Imbsen's. I was still friendly, though. After Ennis left she had one small room in the house. When I said Jacob Imbsen told me to go over and take care of the crops I told Jacob to take care of her share, and he told me to, and I looked after it. I don't remember who asked me to look after it."

Witness testified that testatrix could not figure interest. Ennis Engelson, the boy who had been a member of decedent's family for so long, and who had been treated by her like a son, testified

that testatrix was feeble-minded or childish since he was a boy, but admitted that she knew him all the time and knew the neighbors and knew the cows and knew her way to town and to church, and that she spoke of a brother and sister in Norway, and that she mentioned their names, that she knew the recognized lines of her farm, and that she knew how to keep house, and that she made most of her own clothes. He also testified that he made a practice of lying to her and deceiving her. Her education was very limited, but she could read a little in the Norwegian language and took enough interest in current affairs to read a Norwegian paper as long as she lived, and she also read the Bible frequently.

[4]    It is claimed by contestant that the fact that the testatrix left her property to defendants rather than to her sister, the contestant, or to Clara Moore or Ennis Engelsen, who, it is claimed, were the natural objects of her bounty, is evidence that she was feeble-minded and was influenced by the defendants to dispose of her property as she did. Devising or bequeathing property to strangers or for unusual purposes is a circumstance to be taken into consideration upon questions of undue influence and testamentary capacity. Johnson v. Shaver, supra. But in this case we find nothing unnatural nor surprising in the provisions of the will. Ennis Engelsen and Clara Moore had no claim whatever on the decedent's bounty. The evidence shows that testatrix took care of them and fed and clothed them when they were unable to support themselves, but when they were grown up and when, because of the ravages of old age, the testatrix needed their help and society, they left her without, so far as the evidence shows, ever giving a thought to her welfare. The most that can be said for them is that they were ungrateful to a generous benefactor and deserve no more than they got. With the conetstant, the case is somewhat different, but when it is remembered that these two women, although they were sisters, had been separated from each other for nearly 60 years, during which time they had but seldom communicated with each other and appeared to have taken little if any interest in each other's welfare, it is not surprising that testatrix should have left her property to some one who had been closer to her during her lifetime, and had rendered her substantial aid when in need.

The evidence shows that during the many years testatrix

and defendants lived in McCook county, she had treated Jacob Imbsen as though he were her own nephew, and that he had always treated her with kindness, that he had always taken an interest in her affairs, and had helped her in many ways in the management of her property.

[5] No doubt the testatrix at the time of the execution of the will was suffering from great bodily weakness. Her hearing was defective and her mental vigor impaired, but it cannot be said that she did not thoroughly comprehend the disposition she was making of her property. The law requires soundness of mind, but by this is not necessarily meant that degree of intellectual vigor which one has in youth or that is usually enjoyed by one in perfect health. It is not necessary that one should have sufficient capacity to make contracts and do business generally nor to engage in complex and intricate business matters, but for the purpose of making a will one has a sound mind who, without prompting, has full and intelligent knowledge of the act engaged in, and full knowledge of the property he possesses, and is capable of comprehending its condition and intelligent perception and understanding of the disposition he wishes to make of it and of the persons that he desires shall be recipients of his bounty and gifts, and to recollect and apprehend the nature of the claims of those who are excluded from participating in his bounty.

Tested by the foregoing rule, there can be no doubt that the testatrix was of sound and disposing mind at the time the will was executed, and, upon the evidence in the record, findings and judgment should have been for the defendants.

The judgment and order appealed from are reversed.

DILLON, J., not present.

Note.—Reported in 194 N. W. 842. See, Headnote (1), American Key-Numbered Digest, Wills, Key-No. 163(1), 40 Cyc. 1150; (2) Wills, Key-No. 166(7), 40 Cyc. 1145; (3) Wills, Key-No. 55(10), 40 Cyc. 1034, 1167; (4) Wills, Key-Nos. 53 (9) and 1.3 (6), 40 Cyc. 1034, 1167; (5) Wills, Key-No. 50, 40 Cyc. 1004.

As to what constitutes capacity or incapacity, see notes in 27 L. R. A. (N. S.) 2, 1915A, 444.

On presumption and burden of proof as to sanity and undue influence in respect to wills, see notes in 17 L. R. A. 494, 36 L. R. A. 721.

On effect of unnatural testamentary disposition of property on the question of undue influence, see notes in 6 L. R. A. (N. S.) 202, and 22 L. R. A. (N. S.) 1024.