ESTATE OF ANDERS
LABY et al., Appellants v. THOMPSON et al., Respondents

(226 N.W. 2d 170)

(File No. 11408. Opinion filed February 21, 1975)

Charles E. Gorsuch, Aberdeen, for plaintiffs and appellants.

Sam W. Masten, Canton, for defendant and respondent.

DUNN, Chief Justice.

This is a will contest. On the 26th of June 1973, Robert Thompson, the executor named in the last will and testament of J. Olson Anders, filed a petition for the probate of the Anders will. The appellants, Viola Laby and the McPherson County Welfare Department of McPherson, Kansas, appeared on the date of the hearing and contested the probate of the will. The case

was tried on September 27, 1973, and the trial court entered findings of fact, conclusions of law and a judgment upholding the will. The contestants appeal, contending that the trial court was in error in finding (1) that there were no deficiencies in the execution of the will which would invalidate the instrument, and (2) that the testator was competent and not subject to undue influence at the time of the execution of the will. We affirm.

In 1968, subsequent to his wife's death, decedent executed a new will. This instrument was cancelled by written notation thereon. A second will was executed in 1970. This will was substantially similar to the first. Both wills contain substantial bequests to certain relatives, most notably his nephews by marriage and four named charitable organizations. Both wills also named a local bank as executor. The second will was found torn into many pieces in decedent's home after his death.

In April 1973, decedent was admitted to the hospital. His doctor testified that he complained of weight loss, lack of appetite and constipation. The doctor further testified that the decedent was mentally· alert. Both parties agree that prior to this time decedent was intelligent, articulate and mentally alert. Decedent was a retired college professor and had long taken care of his business affairs. While in the hospital, decedent phoned attorney Carlyle Richards informing him that he desired a new will and outlining the new provisions thereof. Richards had also drawn the 1970 will. On April 17, 1973, Richards went to decedent's hospital room with a draft of the proposed will. Richards testified that he read the will in full and explained it in detail to the decedent and that the latter approved it. Richards and a nurse's aide witnessed decedent's signature. Decedent named seven charitable organizations and Robert Thompson as beneficiaries, and also named Thompson as executor. Decedent was released from the hospital shortly thereafter. After a little more than a month at home, during which it appears he continued to walk downtown and handle his affairs, he died on June 19, 1973.

Robert Thompson began teaching at Northern State College in 1948, the same year that decedent began teaching at Northern. Thompson testified that after the death of decedent's wife it was

his habit to visit with decedent at the latter's home several times a week. The average visit lasted under an hour, and seems to have been marked by professional discussions. Thompson testified that decedent seemed to appreciate these visits because of his loneliness. Thompson was not present at the execution of the new will nor did he assist in its preparation. Decedent had asked Thompson to act as executor under a new will, but according to Thompson he did not know of any provision for him prior to the execution of the new will. Thompson did none of decedent's business until the latter's last illness and then it was restricted to making bank deposits for him. The estate is valued at approximately $100,000, and Thompson's share would be about 11%.

With regard to the first contention of contestants as to the deficiencies in the execution of the will, the testimony of Hattie Gesling reveals that the testator did declare to her that the instrument in question was his will and that he did request that she act as a witness. Contrary to the assertions of the appellants, this uncontradicted evidence is sufficient to uphold the trial court's finding that the will was properly executed and witnessed in this respect. In re Thorpe's Estate, 1954, 75 S.D. 337, 64 N.W.2d 296. Appellants also contend that the attesting witnesses failed to write their respective names and places of residence according to SDCL 29-2-6(5). This omission does not affect the validity of the will.

The appellants next contend that the trial court was in error in finding that "at the time of the making and the execution of the Will, J. Olson Anders was competent, free from duress, menace, fraud or undue influence * * *." The parties agree on the rule governing our review here:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." SDCL 15-6-52(a)

Subject only to statutory restrictions, a competent testator may dispose of all or any part of his estate without regard to familial relationship. SDCL 29-2-3; In Re Vetter's Estate, 1954, 75 S.D. 417, 66 N.W.2d 519. In finding that

decedent possessed requisite testamentary capacity the trial court properly placed the burden of proof with respect to such issue on the proponent. Johnson v. Shaver, 1919, 41 S.D. 585, 172 N.W. 676.

In arguing that decedent lacked testamentary capacity, appellants make much of the fact that decedent was eighty-one years old and hospitalized at the time of the execution. They concede that decedent was mentally vigorous and had demonstrated a certain "brilliance" in managing his business affairs prior to this hospitalization. They rely unduly on the fact that the decedent was somewhat physically weakened during this period. We have held that mere physical weakness is not determinative of unsound mind. In Re Hackett's Estate, 1914, 33 S.D. 208, 145 N.W. 437; In re Brown's Estate, 1929, 55 S.D. 53, 224 N.W. 942. The proper inquiry was set out in Petterson v. Imbsen, 1923, 46 S.D. 540, 194 N.W. 842:

> "No doubt the testatrix at the time of the execution of the will was suffering from great bodily weakness. * * * The law requires soundness of mind, but by this is not necessarily meant that degree of intellectual vigor which one has in youth or that is usually enjoyed by one in perfect health. * * * for the purpose of making a will one has a sound mind who, without prompting, has full and intelligent knowledge of the act engaged in, and full knowledge of the property he possesses, and is capable of comprehending its condition and intelligent perception and understanding of the disposition he wishes to make of it and of the persons that he desires shall be recipients of his bounty and gifts, and to recollect and apprehend the nature of the claims of those who are excluded from participating in his bounty." 46 S.D. at 546; 194 N.W. at 844.

Tested against this standard, it is clear that the findings of the trial court are not clearly erroneous. Decedent's medications while hospitalized consisted only of some salve and milk of magnesia. Decedent's physician, his attorney, Hattie Gesling, and Thompson all testified that decedent was mentally alert and physically capable during his hospitalization. Richards also

testified that decedent read and understood the disposition of his property after dictating the same to Richards by phone. There is no substantial evidence on the issue of testamentary capacity to the contrary.

In their contention that the court erred in a finding that there was no undue influence, appellants allege that a confidential relationship existed between testator and Thompson raising a presumption of undue influence; that the finding on undue influence was not supported by the evidence, and they further contend that the court erred legally in placing the burden of proof upon the contestants on the issue of undue influence as there were "unjust and unnatural bequests" in the will.

▮▮▮▮ Assuming that a confidential relationship existed between decedent and Thompson in fact, this "does not require a finding of undue influence or raise a presumption thereof, or even cast upon the beneficiary the burden of disproving undue influence." Quist v. Beto, 1965, 81 S.D. 375, 135 N.W.2d 730. A presumption of undue influence arises only where the beneficiary actively participated in the preparation and execution of the will and unduly profited therein. Re Metz Estate, 1960, 78 S.D. 212, 100 N.W.2d 393. Where a confidential relationship is established, only the burden of going forward with evidence showing that he took no unfair advantage of the decedent shifts to the beneficiary. Quist v. Beto and Re Metz Estate, supra. Thompson's testimony reveals that he was never substantially involved in the handling of decedent's personal or business affairs; that he did not participate in the preparation or execution of the will; and that he did not seek to pressure decedent into altering his life style or other decisions. In summary, even if a confidential relationship had been established, the record does not support a presumption of undue influence or require a holding that respondent failed to satisfy his burden of going forward.

▮▮▮▮ Under SDCL 29-2-5, a will procured by undue influence may be denied probate. The essential elements of undue influence are: (1) a person susceptible to such influence, (2) opportunity to exert such influence and effect the wrongful purpose, (3) a disposition to do so for an improper purpose, and

(4) a result clearly showing the effect of such influence. The burden of proof with respect to establishing the fact of undue influence is ordinarily placed on the contestants, and this burden is satisfied by a preponderance of the evidence. Johnson v. Shaver, supra. There was no evidence in the record that Thompson actually exerted any undue influence upon the decedent, and the trial court properly found that the appellants had not carried their burden. They contend, however, that the court erred in placing the burden upon the contestants in this case because of the alleged "unjust and unnatural bequests" in the will. There is language in Johnson v. Shaver which states:

> "* * * while seemingly unjust and unnatural bequests or devises are not alone sufficient evidence of mental incapacity or undue influence, they are circumstances entitled to consideration and weight on both issues, and they may be sufficient to impose on the proponent 'the necessity of giving some reasonable explanation of the unnatural character of the will, or, at least, of showing that its character is not the offspring of mental defect, obliquity or perversion.' " 41 S.D. at 593, 172 N.W. at 677.

This contention of the appellants fails in the first instance because they were unable to establish any claim to decedent's bounty other than collateral relationship. Decedent was survived by contestant Laby, a second cousin, certain nephews and others who have no claim to decedent's bounty. Collateral relationship alone does not establish one as the natural object of a testator's bounty. In Re Blake's Estate, 1965, 81 S.D. 391, 136 N.W.2d 242, and In re Rowlands' Estate, 1945, 70 S.D. 419, 18 N.W.2d 290. Charitable and other institutions, of course, have no claim to a testator's natural bounty.

Even assuming, arguendo, that the disposition made was seemingly unjust or unnatural, appellants mistakenly conclude that the burden of proof on the issue of undue influence shifts to the proponent. Only the burden of going forward with a reasonable explanation of the unnatural character of the will shifts to the proponent at this point. In this instance, Thompson did present a reasonable explanation to the trial court. He and

the decedent had been friends and professional colleagues for over twenty years, and decedent appreciated Thompson's visits, especially during the lonely period following his wife's death. Thompson also testified that while decedent had mentioned some relatives, he had never seen them visiting decedent nor had he heard decedent discuss them. Thompson's bequest was a modest 11% of the estate. In view of this evidence of close friendship and the seeming absence of a close relationship with his relatives, it is not unnatural or surprising that decedent favored Thompson over his collateral relatives.

Judgment affirmed.

All the Justices concur.