**In the Matter of the ESTATE OF Kathryn BURK, Deceased.**

**No. 17061.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1991.

Decided April 10, 1991.

Larry F. Hosmer of Kabeiseman, Hosmer & Kettering, Yankton, for proponent and appellee.

David Kroon and William P. Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, for contestant and appellant.

MOSES, Circuit Judge

Kathryn E. Burk (decedent) died on April 2, 1989. She is survived by a son, Walter Eberle Burk (Walter), and a daughter, Patty Laverne Burk (Patty). In this proceeding Walter challenges the validity of the will which decedent executed on January 8, 1987. This will, after providing for the payment of debts and funeral expenses, left the remainder of her estate to Patty. Walter's challenge is based on the following grounds: (1) lack of testamentary capacity; (2) undue influence on the part of Patty; and (3) improper execution. The trial court, without a jury, held a hearing on the matters in issue, made findings of fact favorable to Patty, and admitted the will to probate. This appeal is from that judgment. We affirm.

Decedent was 82 years old when she executed the January 8, 1987, will. Decedent and her husband, Walter Burk Sr. lived in Scotland, South Dakota for 75 years where he was a mechanic and master gunsmith. He had accumulated a large estate which included some antique cars and a large collection of guns. Walter Burk Sr. died in 1975 and his estate passed in its entirety to decedent except for two specific bequests of $5,000.00 to his two children.

After her husband's death in 1975 decedent established a pattern of giving equal amounts of property and money to her children. Each time one would get something from her, she compensated the other equally. The most significant example of this was in 1980 when decedent purchased a $40,000 home in Yankton, South Dakota, for Patty. At this time she paid Walter $40,000 to compensate him for purchase of Patty's residence. There were several other occasions, where she would provide cash for Patty and, in turn, equally compensate Walter.

In 1986 decedent made some changes in her life. She purchased and moved into a home in Yankton, South Dakota across the street from Patty's residence. There is no question that decedent and Patty spent a considerable amount of time together. They saw each other daily and Patty usually took decedent with her everywhere she went.

The second change in 1986, based on an opinion from her tax advisor, was to give Walter the entire gun collection and antique car collection for $20,000. Walter had wanted these collections since high school. The $20,000 payment was for tax purposes. Upon receipt of Walter's $20,000, decedent wrote two checks for $10,000 each and gave Walter and Patty each one of the checks. These transactions were effectively structured to enable decedent to transfer the cars and guns to Walter and avoid federal gift taxes.

The third change in 1986 was a public auction in Scotland, South Dakota. She procured the auction services of Richard Payne (Payne) from Yankton, South Dakota. At the auction, decedent arranged for the sale of her home and surplus personal property.

In addition to these events, decedent made four wills. They were executed in 1980, 1982, 1984 and 1987. In the 1980, 1982, and 1984 wills, decedent treated Walter and Patty equally. In her last will, however, decedent disinherited Walter:

> If I have failed to make provisions in this my Will for my son Walter E. Burk, or for anyone else, the same was done by me intentionally, and not by mistake or oversight, but was done by me for the reasons because I made adequate provisions for them during my lifetime, or for other reasons which to me are good and sufficient. And I hereby state that I am under no contract or agreement with anyone to make provisions for them in this my Will, and I hereby generally and specifically disinherit each and all persons whomsoever claiming to be or who may lawfully be determined to be by heirs at law, except only as stated in this my Will.

Walter contests the changes in the will.

■ In addressing Walter's allegations of error, we note this court will not set aside a trial court's findings of fact unless clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 289, 181 N.W.2d 455, 458 (1970).

A finding is not clearly erroneous unless the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed by the lower court. *Matter of Estate of Pierce*, 299 N.W.2d 816 (S.D.1980); *Matter of Estate of Till*, 458 N.W.2d 521 (S.D.1990). Additionally, we recognize all conflicts in the evidence must be resolved in favor of the trial court's findings. *In re Metz' Estate*, 78 S.D. 212, 100 N.W.2d 393 (1960). Having noted our standard of review, we now examine the issues.

■ Did decedent have the requisite testamentary capacity to make a will when she executed her last will and testament on January 8, 1987?

The necessary requisite testamentary capacity to make a will has been outlined as follows:

> Any person over 18 years of age and of sound mind may execute a will. SDCL 29–2–3. One has a sound mind, for the purposes of making a will, if, without prompting, he is able 'to comprehend the nature and extent of his property, the persons who are the natural objects of his bounty and the disposition that he desires to make such property.' *In re Estate of Podgursky*, 271 N.W.2d 52, 55 (S.D.1978). Soundness of mind, for the purpose of executing a will, does not mean 'that degree of intellectual vigor which one has in youth or that is usually enjoyed by one in perfect health.' *Petterson v. Imbsen*, 46 S.D. 540, 546, 194 N.W. 842, 844 (1923). Mere physical weakness is not determinative of the soundness of mind, *In re Estate of Anders*, 88 S.D. 631, 636, 226 N.W.2d 170, 173 (1975); and it is not necessary that a person desiring to make a will 'should have sufficient capacity to make contracts and do business generally nor to engage in complex and intricate business matters....' *Petterson*, 46 S.D. at 546, 194 N.W. at 844.

*Matter of Estate of Linnell*, 388 N.W.2d 881, 883–84 (S.D.1986).

The matter in issue is the condition of decedent's mind when the will was executed. One may be physically weak and aged and still possess a sound mind. *In re Estate of Hobelsberger, supra.*

Decedent's attorney, A.F. Ulmer (Ulmer), testified that he drafted decedent's four wills. Ulmer testified that decedent approached him about a week prior to the execution of the January 8, 1987, will and wanted to change her previously executed 1984 will. Decedent told Ulmer she wanted the will changed so that Walter would receive no more of her estate. Ulmer testified that he found decedent to be quite intelligent. She had no problem conversing with him, she understood his explanations, and she explained very explicitly what she wanted to have done in changing her 1984 will. Ulmer was of the opinion that decedent was competent to make her last will in 1987.

Ulmer had prepared decedent's previous three wills over a period of six years. He testified that on January 8, 1987, he was completely comfortable that decedent knew what property she had and what she wanted to do with it. On January 8, 1987, Ulmer did not inquire into decedent's knowledge of her property nor did he personally know how much property she owned. *See, In re Estate of Podgursky*, 271 N.W.2d 52 (S.D.1978).

Dr. R.J. Neumayr, decedent's treating physician after October of 1986, testified that in late 1986, decedent was oriented, alert and very much in control. He testified, there were no major signs of depression or confusion. The only confusion at this time was medication and that was cleared up immediately when her dosages were lowered.

Irene Kocer, a bank teller from Tabor, South Dakota, testified that she knew decedent from 1985 to 1989. She saw decedent at least once a month. Kocer testified decedent handled her banking affairs alone, was never confused or nervous, and possessed full knowledge and understanding of what she was receiving in interest on her account. Kocer also noted that she did not notice any changes in decedent over this period of time.

Decedent had land which she rented during late 1986 and early 1987. Lambert Praveck and Steven Cap both testified they saw and dealt with decedent and neither of them ever once observed any problem with decedent. According to them she managed her own affairs, understood farming, and was totally knowledgeable of where her property was and how it was being used.

Payne, her auctioneer for the 1986 sale in Scotland, South Dakota, testified that decedent was "sharp as a tack." She instructed Payne on how she wanted the sale run. Most notable, Payne stated he was impressed that decedent was in total control of the sale situation. Payne at no time found decedent to be confused or nervous. The auction sale was just 26 days prior to the execution of the 1987 will.

Also, decedent's brother Peter Eberle, decedent's friend, Mary Dennison, and her daughter, Patty, all testified. They had been in contact with decedent, never noticed any changes in decedent, and continually found her to be in total control of her personal and business affairs.

To counter this testimony, Walter called a Dr. David Smith (Smith), a doctor of internal medicine and head of Geropsychiatry for the South Dakota Human Services Center in Yankton, South Dakota. Smith never personally treated decedent but formed and based his opinion upon a review of decedent's medical chart. Smith testified that the dose of medication decedent was receiving in late 1986 was uncommonly high and such a high dose at decedent's age could cause depression and confusion. Smith was further of the opinion that decedent suffered from congestive heart failure, generalized atherosclerosis, urinary tract infection, depression, and weight loss. Smith determined that the decedent was a very sick person.

Although many of Smith's diagnoses may be medically sound, they are all predicated upon such phrases as "could cause" and "may have caused." Weighing Smith's testimony against all of the other evidence presented the trial court found Smith's opinions inconclusive.

The other counter evidence was from Walter. He explained several situations where he noticed confusion and misunderstanding on decedent's part, most notably during the antique car and gun transaction. However, testimony given by Walter was strongly outweighed by the other evidence.

The trial court found that the decedent had a sound mind to make her last will. This finding is not clearly erroneous.

Walter contends that even if decedent had the requisite testamentary capacity to execute her last will, it was the result of undue influence or fraud.

In *Matter of Estate of Borsch*, 353 N.W.2d 346, 349 (S.D.1984) we outlined the four elements which are essential before a will can be declared void for undue influence:

[A] will procured by undue influence may be declared void. To establish the existence of undue influence, contestants must be able to prove by a preponderance of the evidence four essential elements: (1) decedent's susceptibility to undue influence, (2) opportunity to exert such influence and effect the wrongful purpose, (3) a disposition to do so for an improper purpose and (4) a result showing the effects of such influence.

A presumption of undue influence may be established by showing that a confidential relationship exists. In *Borsch*, 353 N.W.2d at 348, we discussed, at length, confidential relationships:

A confidential relationship exists whenever a decedent has placed trust and confidence in the integrity and fidelity of another. *In re Estate of Weickum*, 317 N.W.2d 142, 145 (S.D.1982). The mere existence of such a relationship does not automatically raise a presumption of undue influence, however, 'unless beneficiary actively participated in the preparation and execution of the will and unduly profited therein.' (citation omitted). Further,

[e]ven though the existence of a confidential relationship, in and of itself does not create a presumption of undue influence, it may demand that the relationship be examined with close ju-

dicial scrutiny so as to insure that the transactions which transpired in conjunction with the confidential relationship are fair and aboveboard.

Once a confidential relationship has been established, "the burden of 'going forward with the evidence' shifts to the beneficiary to show that he [she] took no unfair advantage of his [her] dominant position." *Id.*

■ In the present case, Walter contends Patty had a confidential relationship with decedent which meets the test for raising the presumption of undue influence. Walter further contends that even if the court finds no confidential relationship existed between decedent and Patty, Patty's conduct would still meet the four elements of undue influence.

There is no question that Patty and decedent had a close and trusting relationship. Their relationship meets the definition of confidential as we envisioned in *Estate of Weickum, supra.* The presumption of undue influence, however is not raised from a confidential relationship unless the beneficiary actively participates in the preparation and execution of the will. *In re Betty A. Luhrs Trust,* 443 N.W.2d 646 (S.D. 1989); *Matter of Estate of Till, supra.* Where a beneficiary guides a decedent through a great many steps in the process of making changes in the will the transaction should be scrutinized and condemned unless shown to be fair and aboveboard.

Ulmer, decedent's attorney, testified Patty had no active participation in the preparation or the execution of decedent's last will. Patty was not present at any of decedent's meetings with Ulmer in executing the will. There is nothing in the record that indicates that Patty guided decedent through the process of making changes in her will. The trial court found insufficient evidence before it to raise a presumption of undue influence from the confidential relationship of Patty and decedent; therefore, the burden of going forward to show Patty exerted undue influence remains with Walter.

Walter's burden is to prove by a preponderance of the evidence all four elements of undue influence outlined in *Borsch, su-*

*pra.* There is no question that two of the four elements have been met. First, there was sufficient evidence that Patty had an opportunity to exert influence over decedent. Second, there was sufficient evidence that, after decedent changed her last will disinheriting Walter, she may have been influenced by Patty.

The two other elements, whether decedent was susceptible to influence from Patty and whether Patty had a disposition to do so for an improper purpose, are questions of fact for the trial court.

In this case Walter relied on the testimony of Smith. Smith claims decedent's age of 82, ailing health, large dosage of medication, and deteriorating physical and mental condition created an atmosphere of susceptibility. Second, Walter argues that decedent was confused about the antique gun and car transaction and her subsequent actions were a product of a delusion or fraud. Third, Walter contends that decedent's action, disinheriting him, was contrary to her previous three wills and her constant expression for equal treatment for both him and Patty.

For authority on susceptibility, Walter relies heavily on *Johnson v. Shaver,* 41 S.D. 585, 595, 172 N.W. 676, 678 (1919): "[a] declaration of testator made previous to the execution of the will, and indicating a purpose inconsistent with the provisions thereof, 'is competent and relevant, in connection with other evidence, as tending to show susceptibility to undue influence.'"

Walter argues that before executing her last will decedent made statements to Ulmer inconsistent with the provisions of it. Decedent expressed her intention to change her will so that her children would be treated equally. Walter maintains following, *Johnson, supra,* decedent's actions prior to executing her last will were contrary to her intentions and indicates susceptibility.

■ The trial court found that overwhelming evidence exists to the contrary. During this period of execution of the will, several witnesses testified decedent was totally in control of her personal and business affairs. This testimony was present-

ed by decedent's lawyer, accountant, attending physician, business acquaintances, tenants, friends and relatives. The trial court found that evidence was presented which suggests decedent changed her will because she was troubled by Walter's actions surrounding the transaction of the antique guns and cars. Decedent was upset that Walter took assets back to California which he was not entitled to have. Decedent, in addition, made statements following the transaction that Walter had received his share of her assets. Further, a testator has the privilege and right to dispose of his property as he chooses within limits and in the manner fixed by statute. The law does not require that he recognize his relatives equally or at all. *Borsch, supra.*

The trial court found that Walter failed to show that decedent was more likely susceptible to influence from Patty than not. We cannot find that based on the record the trial court was in error. Having found that Walter failed to prove the element of susceptibility, the trial court found no need to address the question of whether Patty had a disposition to influence decedent with an improper purpose.

Walter also contends decedent's actions were precipitated by fraudulent inducement. The trial court found no facts or evidence whatever of any fraud practiced upon the decedent, by Patty or anyone else.

■ Lastly, Walter alleges that decedent's last will and testament was not properly executed and attested to by subscribing witnesses.

SDCL 29-2-6 provides as follows:

Every will, other than a nuncupative will, must be in writing, and every will, other than an olographic will and an nuncupative will, must be executed and attested as follows:

(1) It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto;

(2) The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority;

(3) The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will;

(4) There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will, at the testator's request and in his presence;

(5) A witness to a written will must write, with his name, his place of residence; and a person who subscribes the testator's name, by his direction, must write his own name as witness to the will. A violation of this subdivision does not affect the validity of the will.

Decedent was read the will in Ulmer's office and then went to the bank in Menno where the will was executed. Ulmer announced to the subscribing witnesses that Mrs. Burk would like to witness her will, and on her behalf asked the witnesses if they would be willing to do so. Decedent did the signing and the witnesses signed in each other's presence.

In the case of *In re Ryan's Estate,* 74 S.D. 359, 361, 53 N.W.2d 11, 12 (1952) this court held:

In accord with the great weight of authority, this court has held that to satisfy the foregoing provision of publishing a will, it is not required that a testator expressly declare to the attesting witnesses that the instrument he is subscribing is his will or that he expressly request them to sign as witnesses. It is sufficient, if at the time of the execution, he make it manifest to them by either word, sign or conduct that the instrument is his will and he desires them to sign as attesting witnesses.

In the case *In re Estate of Walsh,* 89 S.D. 342, 232 N.W.2d 850 (1975), the identical situation occurred at the execution of the will and we held that the execution of the will satisfied the requirements of SDCL 29-2-6.

A will prepared by and executed and published under the direction of an attorney tends to support the attestation clause and due execution thereof. *Mahlman v. Kratzer,* 80 S.D. 264, 122 N.W.2d 215 (1963); *Matter of Heer's Estate,* 316 N.W.2d 806 (S.D.1982).

The trial court found that decedent's will was properly executed, acknowledged and attested, conforming to all of the requirements specified in SDCL 29–2–6. Based on the consideration of these cases, it follows the trial court did not err in holding that the will under attack has been validly executed.

We affirm the trial court.

MILLER, C.J., and WUEST, HENDERSON, and SABERS, JJ., concur.

MOSES, Circuit Judge, for HERTZ, Acting J., disqualified.

AMUNDSON, JJ., not having been a member of the Court at the time this case was submitted, did not participate.