2004 SD 80

**In the Matter of the ESTATE OF Richard Martin SCHNELL.**

**No. 22803.**

Supreme Court of South Dakota.

Argued April 28, 2004.

Decided June 23, 2004.

Rehearing Denied Aug. 2, 2004

Leroy Hill of Leroy Hill Law Office, Belle Fourche, South Dakota, Attorney for appellant Casey Schnell.

Travis Jones of Beardsley, Jensen & Von Wald, Rapid City, South Dakota, Attorneys for appellee American Cancer Society.

Michael P. Ortner, Hot Springs, South Dakota, Attorney for appellee Elaine Mann.

SRSTKA, Circuit Judge.

[¶ 1.] Casey Schnell (Casey) contested his father's will that disinherited him and his brothers. Casey also sought an injunction to prevent the disposition of payable on death and transfer on death provisions of certain property that his father made. Casey alleged that his father, Richard M. Schnell (Richard), lacked testamentary capacity to make payable on death and transfer on death dispositions of his investments and to execute his last will and testament because he was suffering from an insane delusion. Casey further claimed Richard was unduly influenced while making these dispositions.

[¶ 2.] The trial court held Richard had testamentary capacity and was not subject to undue influence at the time he arranged for his investment dispositions and executed his will. The court entered findings of fact, conclusions of law and three orders denying Casey's request for a preliminary injunction, permitting the payable on death and transfer on death beneficiaries to gain access to their investments, and admitting the will to formal probate. Casey appeals. We affirm.

FACTS

[¶ 3.] Richard married Iola in August 1947. They farmed in Butte County, South Dakota. They had four sons, Jess, Casey, Dean and Todd, who died at age four.

[¶ 4.] Iola and her sons suffered years of physical and mental abuse from Richard. For example, when Jess was nine months old Richard threw him into a snow bank outside the house because he would not stop crying. Richard kept Jess home from school to drive a hay mower when he was a young boy. Richard worked the boys in the hayfields all day and then left them in his pickup without dinner while he went drinking in the bar. Richard also beat his family. He hit Jess in the face so hard he broke his eye socket and he broke Iola's nose so severely that she required plastic surgery. The record is full of such abuse. Fearing for their lives, Iola eventually took the boys and left in Richard 1972.

[¶ 5.] The couple divorced in 1973. Richard refused to pay child support. He hid his farm equipment from the court. He had little contact with his family following the divorce.

[¶ 6.] Richard lived alone on the family farm for several years but eventually sold the farm and moved to Hot Springs, South Dakota. In April 2001 Richard learned he

had colon cancer. On August 11, 2001, Richard retained Hot Springs attorney, Richard Hunter (Hunter), to prepare a will. Richard was planning a trip to Tulsa, Oklahoma, for cancer treatment and wanted to execute a will prior to his departure. According to Hunter, Richard had made various changes to his investment and bank accounts prior to their meeting and brought the associated paperwork with him. The two discussed how Richard wished to devise his property and the need for a personal representative. Hunter testified that Richard said he had very little contact with his sons over the last thirty years and that he wished to disinherit them. Overall, Hunter felt that Richard understood the nature and extent of his property, the natural objects of his bounty and how he wished to devise his property. Richard executed his will on August 14, 2001.

[¶ 7.] Richard's will devised $1.00 to each of his three sons. The remainder of his $600,000 estate was devised to his sister, Elaine Mann (Mann), his named personal representative, Dale Stark (Stark), the daughter of one of Richard's former employees, Michelle Kenstler (Kenstler), various other acquaintances and American Cancer Society (ACS). Richard died at the Fort Meade Veterans' Hospital on May 8, 2002.

## STANDARD OF REVIEW

[¶ 8.] We review a trial court's findings of fact on the issues of testamentary capacity and undue influence under a clearly erroneous standard. *In re Estate of Dokken,* 2000 SD 9, ¶ 10, 604 N.W.2d 487, 490. We defined the clearly erroneous standard in *Baun v. Estate of Kramlich,* 2003 SD 89, ¶ 21, 667 N.W.2d 672, 677, as:

No findings will be set aside unless they are clearly erroneous. SDCL 15–6–

52(a); *Matter of Estate of Elliott,* 537 N.W.2d 660, 662 (S.D.1995). A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made. *Id.* (citations omitted). All conflicts in the evidence must be resolved in favor of the trial court's determinations. *Matter of Estate of Till,* 458 N.W.2d 521, 523 (S.D.1990). The credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence. *Elliott,* 537 N.W.2d at 662. That we may have found the facts differently had we heard the testimony is no warrant for us to substitute our judgment for the trial court's findings. *Matter of Estate of Long,* 1998 SD 15, ¶ 9, 575 N.W.2d 254, 256. Lastly, the contestants have the ultimate burden of persuasion on the issue of competency. SDCL 29A–3–407.

## DECISION

[¶ 9.] According to SDCL 29A–3–407, the contestant of a will has the burden of proof. This statute states in part:

Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.

Therefore, it is Casey's burden as the contestant of Richard's will to prove his claims of (1) lack of testamentary capacity and (2) undue influence.

## ISSUE ONE

[¶ 10.] **Did Richard lack testamentary capacity?**

[¶ 11.] "An individual eighteen or more years of age who is of sound mind may make a will." SDCL 29A–2–501. Sound mind, for purposes of testamentary capacity, has been defined as:

> One has a sound mind, for the purposes of making a will, if, *without prompting,* he is able "to comprehend the nature and extent of his property, the persons who are the natural objects of his bounty and the disposition that he desires to make of such property." *In re Estate of Podgursky,* 271 N.W.2d 52, 55 (S.D. 1978). Soundness of mind, for the purposes of executing a will, does not mean "that degree of intellectual vigor which one has in youth or that is usually enjoyed by one in perfect health." *Petterson v. Imbsen,* 46 S.D. 540, 546, 194 N.W. 842, 844 (1923). Mere physical weakness is not determinative of the soundness of mind, *In re Estate of Anders,* 88 S.D. 631, 636, 226 N.W.2d 170, 173 (1975); and it is not necessary that a person desiring to make a will "should have sufficient capacity to make contracts and do business generally nor to engage in complex and intricate business matters." *Petterson,* 46 S.D. at 546, 194 N.W. at 844.

*Matter of Estate of Long,* 1998 SD 15, ¶ 21, 575 N.W.2d 254, 257–58. "Testamentary capacity is not determined by any single moment in time, but must be considered as to the condition of the testator's mind a reasonable length of time before and after the will is executed." *Long,* 1998 SD 15, ¶ 23, 575 N.W.2d at 258.

[¶ 12.] The trial court reviewed all three requirements for establishing testamentary capacity. It determined that Richard comprehended the nature and extent of his property. Richard's financial advisors, neighbors, family and the attorney who drafted his will testified that Richard knew the nature and extent of his property. Richard made an inventory of nearly all of his real and personal property. It was found in his home and submitted as part of the record. The trial court's finding that Richard understood the nature and extent of his property was not clearly erroneous.

[¶ 13.] The trial court next considered whether Richard knew the natural objects of his bounty. This was the most controversial of the three requirements. Casey asserted that because of Richard's insane delusion, he could not determine the natural objects of his bounty. Richard's alleged insane delusion was that he wanted nothing to do with his sons because they wanted to hurt him. According to Casey, Richard had no sane reason to hate his sons or to fear them. Thus, he suffered from an insane delusion.

[¶ 14.] Two opposing experts testified on the subject of the insane delusion. Based on the evidence, the trial court found no credible basis to suggest that Richard was suffering from an insane delusion or that he did not comprehend the nature and objects of his bounty. The trial court concluded that although Richard was not a nice man and held a grudge, he still knew who his children were. According to the testimony of Hunter, the attorney who prepared Richard's will, Richard informed him at their first meeting that he had three sons but that he had little contact with them and wished to disinherit them. The trial court's finding that Richard presented handwritten notes to Hunter at their first meeting listing his sons also indicates Richard knew he had three sons. Furthermore, Richard listed his sons in order of birth within his will where he bequeathed them each $1.00. The trial court held that even if Richard had been under a delusion that his sons were after him or he may not have liked

his sons, it did not impede his legal right to disinherit them.

[¶ 15.] This Court has not defined an insane delusion. Casey suggests we examine a jury instruction defining an insane delusion which the North Dakota Supreme Court found fairly and fully informed the jury of the applicable principles. It states:

> An insane delusion is insanity upon a single subject. An insane delusion renders the person afflicted incapable of reasoning upon that particular subject. He assumes to believe that to be true which has no reasonable foundation in fact on which to base his belief. A person persistently believing supposed facts which have no real existence against all evidence and probability, and conducting himself upon the assumption of their existence, is so far as such facts are concerned, under an insane delusion. An insane delusion may exist even though there was some evidence from which the person afflicted might have formed his belief of judgment. It is a belief which is not based upon reasonable evidence, or at least without any evidence from which a sane man could draw the conclusion which form the delusion.

*Matter of Estate of Flaherty*, 446 N.W.2d 760, 763 (N.D.1989).

[¶ 16.] This definition is consistent with definitions established in other jurisdictions. *See Breeden v. Stone*, 992 P.2d 1167, 1170 (Colo.2000) (defining insane delusion as "a persistent belief in that which has no existence in fact, and which is adhered to against all evidence"); *In re Estate of Diaz*, 271 Ga. 742, 524 S.E.2d 219, 221 (1999) (insane delusion is "a delusion having no foundation in fact and that springs from a diseased condition of mind"); *Dixon v. Webster*, 551 S.W.2d 888, 892 (Mo.Ct.App.1977) (insane delusion is

"where a person imagines something extravagant to exist which really has no existence whatever, and ... is incapable of being reasoned out of his false behalf, he is in that respect insane"); *Melody v. Hamblin*, 21 Tenn.App. 687, 115 S.W.2d 237, 246 (1937) (a person is said to suffer from an insane delusion "when he conceives something extravagant or unreasonable to exist which has no existence except in his own abnormal imagination, but having once conceived the thing or conditioned to exist, it is impossible to reason him out of it").

[¶ 17.] We find North Dakota's definition to be acceptable and adopt it. The burden of proof is on the will contestant to show by a greater weight of the evidence that the testator suffered under an insane delusion. *In re Estate of Flaherty*, 446 N.W.2d 760, 763 (1989). The will of a testator found to suffer from an insane delusion will not be held invalid, however, unless it is shown that his delusion materially affected the terms and provisions of his will. *In re Estate of Breeden*, 992 P.2d 1167, 1171 (2000).

[¶ 18.] Casey fails to meet his burden under this definition. The primary evidence presented to prove Richard's insane delusion was a second-hand statement from Casey's cousin who heard from her mother that Richard believed his children were "hiding in the hills with guns." However, the cousin testified she did not think Richard was really afraid of his sons. Furthermore, even if Richard did fear his sons he had a reasonable basis for this fear because his eldest son, Jess, had physically threatened Richard. The evidence further showed that Richard and Casey met from time to time in Butte County where they both resided. Casey testified that he would visit with Richard from time to time from five minutes to forty-five minutes.

On at least one occasion, Richard invited Casey and Dean into his house where they visited for fifteen minutes. A fact finder could reasonably conclude that Richard was not afraid of his sons. Therefore, even after applying the definition of an insane delusion, the trial court's findings that Richard was not suffering from an insane delusion and that he knew the natural objects of his bounty were not clearly erroneous.

■ [¶ 19.] Lastly, the trial court found that Richard knew how he wanted his property distributed. The trial court found that Richard disposed of his property to people with whom he had personal relationships and who had helped him. He did not give it away haphazardly. The trial court found that Richard made various changes to his investments and bank accounts in order to make arrangements for the drafting of his will. Richard also brought papers to his meeting with Hunter that set forth the distributions he wanted to make. The trial court found that Hunter never questioned whether Richard was of sound mind. According to Hunter, Richard asked appropriate questions and never acted confused or uncertain about any of his property in any respect. The trial court's findings were not clearly erroneous, and the trial judge correctly concluded that Richard had testamentary capacity.

## ISSUE TWO

[¶ 20.] **Was Richard subject to undue influence?**

■ [¶ 21.] It is well settled that it is a will contestant's burden to prove each of the four elements of undue influence by the greater weight of the evidence. These elements include:

(1) decedent's susceptibility to undue influence;

(2) opportunity to exert such influence and effect the wrongful purpose;

(3) a disposition to do so for an improper purpose; and

(4) a result clearly showing the effects of undue influence.

*In re Estate of Holan*, 2001 SD 6, ¶ 16, 621 N.W.2d 588, 591–592. "For influence to be undue it must be of such a character as to destroy the free agency of the testat[or] and substitute the will of another for that of the testat[or]." *Matter of Estate of Elliott*, 537 N.W.2d 660, 662 (S.D.1995).

■ [¶ 22.] The trial court held that Richard was not susceptible to undue influence. In determining whether Richard was susceptible to undue influence "the physical and mental strength of a testator is material." *Matter of Estate of Unke*, 1998 SD 94, ¶ 21, 583 N.W.2d 145, 149. Casey alleges that Richard was suffering from a paranoid insane delusion and was easily susceptible to undue influence. However, again the trial court found insufficient evidence of an insane delusion. Rather, the trial court found the evidence to show Richard was a man with his own mind who did what he wanted when he wanted. This was based upon the testimony of Richard's long-time financial representative and close neighbors and friends who testified that Richard was not susceptible to influence, was competent, and was an informed investor who knew the value of his assets. This evidence is sufficient to support the trial court's finding that Casey failed to prove Richard was susceptible to undue influence.

[¶ 23.] The trial court also found Casey failed to prove the second and third elements of undue influence. Because we find that the trial court did not err in finding Casey failed to satisfy his burden of establishing the first element, we need not address the remaining elements.

## CONCLUSION

[¶ 24.] The trial court determined that Casey failed to meet his burden under SDCL 29A–3–407 of proving that Richard lacked testamentary capacity or that he was subject to undue influence. The evidence is sufficient to support the trial court's findings on both of these issues and thus these findings are not clearly erroneous.

[¶ 25.] We realize that this decision does not right the many wrongs that Richard committed against his family. Unfortunately, the state of the law is such that the court system has no power to right such wrongs by giving surviving children a forced share of the estate of a disinheriting parent. Such remedial action lies within the province of the legislative branch. We cannot expand the law in this area no matter how great the equities of the case.

[¶ 26.] Affirmed.

[¶ 27.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 28.] SRSTKA, Circuit Judge, for SABERS, Justice, disqualified.